105 P.3d 56 (2005)
STATE of Washington, Respondent,
v.
Ronald Joseph LUTHER, Appellant.
No. 52391-1-I.
Court of Appeals of Washington, Division 1.
January 10, 2005.
*57 Nancy P. Collins, Washington Appellate Project, Seattle, WA, for Appellant.
Dennis J. McCurdy, King County Prosecutor's Office, Seattle, WA, for Respondent.
KENNEDY, J.
Seattle Police received an anonymous tip that Ronald Luther was using the Internet to obtain sexually explicit pictures of children. Luther eventually was charged with seven separate counts of possessing depictions of minors engaged in sexually explicit conduct, contrary to RCW 9.68A.070, and waived his right to a jury trial. The court ultimately found Luther not guilty of the charged counts but guilty of one count of attempted possession of depictions of minors engaged in sexually explicit conduct, and stayed its 120-day sentence pending appeal. Because the trial court did not find Luther guilty of possessing constitutionally protected materials, because the offense of attempted possession of depictions of minors engaged in sexually explicit conduct is not constitutionally overbroad, and because the evidence was sufficient to convict Luther of the crime of which he was convicted, we affirm.

FACTS
In February of 2000, Detective Shannon Anderson, who worked for the Seattle Police Department on Internet crimes against children, received information from an anonymous "cyber tipster" through the National Center for Missing and Exploited Children. The information specified that a person in the Seattle area using the screen names of "RJoeLuther" and "Wombat" was having sexual conversations with minors and exchanging sexual images of minors over the Internet. The informant stated that the person was specifically communicating with another identified as "Steve13," who the informant believed to be a 13-year-old boy. Additional information from the tipster, including a home telephone number, led Detective Anderson to Ronald Luther.
In June of 2000, Detective Anderson contacted Luther by telephone. Luther admitted to communicating with "Steve13" via the Internet, but stated that he did not know the actual age of the person called "Steve13." Luther said that he usually chatted with other adults. Detective Anderson stated that Luther gave her his address and told her that he lived with a roommate, but that his roommate did not chat online. Detective Anderson testified that Luther agreed to come in to the police station to talk further with her, but that he later changed his mind.
The investigation was resumed in April of 2001 when Detective Anderson and Detective Leanne Shirey contacted Luther at his home. After the officers identified themselves, Luther began talking about "Steve13" and about viewing child pornography, without any prompting from the officers. Detective Anderson asked if she could search his computer and Luther responded that he would have to get his roommate's permission. When Detective Anderson asked if she could *58 get a written statement instead, Luther agreed and invited the officers inside.
Luther showed the detectives two computers in the household; one in his bedroom and one in the living room. Detective Anderson read Luther his Miranda[1] rights and asked him if he understood them. Luther indicated that he did understand, and then began talking to her. The admission of Luther's statements to the officers into evidence at the trial is not challenged on appeal.
Detective Anderson testified that Luther described in detail receiving a picture from "Steve13" that showed what he thought was a preteen or teen boy's naked genitals. Detective Anderson testified that Luther stated that he had received images from various people who claimed to be 18 or older, and that when he received images of pornography that looked like they depicted someone younger than 18 years old, he deleted those images because he was not "into that."
Detective Anderson testified that Luther also stated that he used both his and his roommate's computers to chat on line. Detective Anderson testified that Luther admitted that he signed onto chat rooms using the name "wombat" or "wombat1."
The officers obtained a search warrant for both of the computers, as well as data storage such as floppy disks and taped back-ups, in Luther's home. Computer forensic examiner Thomas Giboney conducted a search of both computers and the data seized. This search revealed sexually explicit images of what appeared to be minors contained on both CD Rom and floppy disks. A further search revealed e-mail chat logs with "rjoeluther" and "wombat1" that contained numerous examples of Luther communicating with what appeared to be minors. The trial court later ruled that the search and seizure was valid and the search is not contested on appeal.
Luther was ultimately charged with seven separate counts of possessing depictions of minors engaged in sexually explicit conduct, contrary to RCW 9.68A.070. These charges were based on picture files as well as chat-room logs by "wombat1" found by police on the computers seized from Luther's home and later admitted into evidence.
Luther waived his right to a jury trial. At trial, the court viewed the seven pictures offered by the State as evidence. These pictures showed young men engaged in explicit sexual conduct but their ages were undetermined. Detective Anderson admitted at trial that it was possible that a person could receive pictures through the Internet without being aware that they contained child pornography until they were opened. However, Giboney explained that the various images introduced into evidence had not been deleted, as Luther had told detectives, but had been intentionally saved and accessed at later dates. Luther later stipulated that the files that Giboney had testified about were all active files, and that there was no evidence that they had been deleted.
The trial court also viewed various chat room logs offered by the State as evidence. Detective Anderson testified that these logs had pictures attached to them, but the majority were not provided in the record for this appeal. One log, which contained conversations between "wombat1" and "eric16" is presented on appeal. Detective Anderson testified that this chat log had two pictures attached to it. One was titled "ERIC16.jpg" and showed a young man in a jock strap. The following are excerpted portions from that log:
Start of eric16 buffer: Tue Oct 31 06:15:58 2000
 Hi
 hi
 how's it hangin' where you are?
 it's not hanging at all. way up!
 kewl man ... you have a cam too?
 not yet. sorry
 Hehe that's ok ... you have a pic maybe?
 yup
:)
 wanna swap?
 kool

*59 sending mine
 k
 trying mine again
 are you getting any indication there?
 yeah. but not going thru
 Hmmm shall I try e-mailing it?
 can I see u on ur cam?
 darned only have a few minutes left before I have to run ... you online much
 not really
 I do like to show for a guy ... jackoff and all that
 I j/o with ya
 and you look pretty hot in that jockstrap man
 thnx
 got to run to get ready for work ... where do you live Eric?
 tx ...
[portions of log excluded]
Start of eric16 buffer: Wed Nov 15 06:53:01 2000
 Hey there buddy ... this Eric in Tejas?
 I think you sent me a pic of you wearing a jockstrap ... hot pic!
:)
 you boned this morning man?
 yeah
 you like jacking cam2cam?
 r u on cam?
 not yet;o)
 i have no cam tho
 damn ... love to see that hard d* * * of yours... you got a pic of it maybe?
 yup
 Mmmmmmmmmmmmm can I see it?
 i send while watching u
 Hmmm can't I see it first dude?
 firing up NetMeeting here in anticipation
 kewl ... it works ... had to make sure `cause the roomie dropped the cam a couple of days ago
:)
 do you have a mic maybe too?
 u got a roomie?
 yup.. sound asleep
 will you send me that pic if you see my bulge... before I get it out for you?
 rather c it out:)
 hehe well yeah.. but you are underage so have to be careful
 how old r u?
 then you can see me pull it out
 well way over 16..
[portions of log excluded]
 my IP is 24.6.212.46 but won't pull it out `til you send your pic; o)
 gonna go for it man?
 it's pretty thick
:)
 feels pretty good just rubbin' it this way... go ahead and send that pic;o)
 that was hot man!!!;o)
 bye for now man!
Exhibits 19-20.
After hearing the testimony and viewing the exhibits, the trial court found that despite Luther's claim that he deleted pornographic images of minors when he received them because he was "not into" child pornography, images connected to Luther's on-line chats had not been deleted and instead were active files. Thus, the trial court found that Luther possessed the photographic images and on-line chat logs seized by the police from computer data banks in Luther's possession and control.
However, the court also found that the State had presented no evidence concerning the ages of the persons depicted in the photos, nor of their identities. Luther argued that in Ashcroft v. Free Speech Coalition, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), the United States Supreme Court held that a person may not be found guilty of *60 possession of something that is portrayed to be or presented as if it were child pornography unless it is proven beyond a reasonable doubt to actually be child pornography. The trial court found by a preponderance of the evidence that the materials depicted actual minors, but ultimately held that it could not find Luther guilty beyond a reasonable doubt of possession of depictions of minors engaged in sexually explicit conduct as required by Ashcroft.
Nevertheless, the court found that Luther intended to possess depictions of minors engaged in sexually explicit conduct, and that Luther took a substantial step toward possession of such materials. Despite the fact that the State had not proved that the depictions were actually of minors, the attempt statute, RCW 9A.28.020(2), focuses on the actor's criminal intent and expressly provides that factual impossibility is not a defense to the attempt crime. Thus, the trial court found Luther guilty of one count of attempted possession of depictions of minors engaged in sexually explicit conduct.
The court sentenced Luther to 120 days in jail, but stayed the sentence pending appeal. On appeal Luther does not dispute that he possessed the materials and images entered into evidence. Rather, Luther argues that the trial court erroneously found him guilty of possessing constitutionally protected materials, that the offense of attempted possession of depictions of minors engaged in sexually explicit conduct is constitutionally overbroad, and that the evidence was insufficient to convict him in any event.

DISCUSSION

I. Constitutional Issues

A. Possession of Pornography

Luther first argues that the trial court erroneously found him guilty of possessing constitutionally protected materials. We disagree. Because the State failed to prove that the depictions were of actual minors engaged in sexually explicit conduct, the materials may be constitutionally protected under Ashcroft; but that begs the question here. Luther was convicted of attempting to possess constitutionally unprotected materials  child pornography. The materials he possessed provided evidence of his intention and substantial step, but contrary to his arguments, he was not convicted of possessing those materials.
Ashcroft analyzed the constitutionality of the Federal Child Pornography Prevention Act of 1996 (CPPA). The CPPA had expanded the federal prohibition on child pornography to include not only pornographic images made using actual children, but also knowing possession of "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture," that "is, or appears to be, of a minor engaging in sexually explicit conduct." Ashcroft, 535 U.S. at 234, 122 S.Ct. 1389 (citing 18 U.S.C. 2256(8)(A), 2256(8)(B)). The Ashcroft court emphasized that prohibitions against possession of child pornography are rooted in the abuse and protection of the actual children that are involved in the creation of child pornography. "[W]here the speech is neither obscene nor the product of sexual abuse, it does not fall outside the protection of the First Amendment." Ashcroft, 535 U.S. at 251, 122 S.Ct. 1389 (citing New York v. Ferber, 458 U.S. 747, 764-65, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)). Thus, Ashcroft held that the CPPA's prohibition of material that "appears to be" a minor engaging in sexually explicit conduct was overbroad and unconstitutional because it might criminalize possession of materials that did not contain images of actual minors and that might be afforded minimal First Amendment protections. Ashcroft, 535 U.S. at 241, 250-51, 122 S.Ct. 1389.
Luther argued below, and the trial court agreed, that Ashcroft required the State to prove beyond a reasonable doubt that the depictions he possessed contained images of actual minors, in order to convict him of the charged offenses. Luther also concedes that the trial court properly found him not guilty of possession of depictions of minors engaged in sexually explicit conduct, because the State was unable to meet this burden of proof. However, Luther asserts that the court's determination that he was guilty of attempted possession of such materials was *61 erroneous because it "ignores the constitutional protections accorded to the computer images on which the prosecution is based." Appellant's Brief at 11. This argument is unsupported.
Luther provides no authority for his argument that his possession of what might be constitutionally protected materials should somehow bar his conviction for attempted possession of constitutionally unprotected materials. Luther concedes that a person may be guilty of an attempt to commit a crime when he or she (1) acts with the intent to commit the offense; (2) fails to complete that offense through no fault of his or her own; and (3) takes a substantial step toward commission of the crime. State v. Davidson, 20 Wash.App. 893, 898, 584 P.2d 401 (1978); RCW 9A.28.010(1). Luther further concedes that it is not a defense to a charge of attempt that the crime was legally or factually impossible under the attendant circumstances. RCW 9A.28.020(2). While the images that Luther possessed may not have contained depictions of actual minors, thus making the crime of possession factually impossible, this fact by itself is not an effective defense to the crime of attempt.
Because the trial court did not find Luther guilty of actual possession of the materials found in his home, we need not determine whether the materials Luther possessed were protected by the First Amendment; we will assume that they were protected, in that the State did not prove otherwise.
We also need not consider the State's argument that the graphic sexual images that Luther possessed were "obscene" and thus unprotected by the First Amendment. See, e.g., Ferber, 458 U.S. at 764, 102 S.Ct. 3348; Miller v. California, 414 U.S. 881, 94 S.Ct. 26, 38 L.Ed.2d 128 (1973). This argument was not raised below nor addressed in Luther's brief to this court. RAP 2.5(a); RAP 10.3(c).
In sum, Luther has presented no persuasive argument or authority that the First Amendment or its Washington constitutional counterpart prevents a trier of fact from basing a defendant's conviction for attempted possession of child pornography upon the defendant's possession of materials that appear to be child pornography but that may in fact not depict actual minors engaging in sexually explicit conduct.

B. Overbreadth Analysis

Luther next argues that the offense of attempted possession of depictions of minors engaged in sexually explicit conduct is constitutionally overbroad. Again, we disagree.
The purpose of overbreadth analysis is to ensure that legislation does not prohibit constitutionally protected conduct, including free speech. City of Tacoma v. Luvene, 118 Wash.2d 826, 827 P.2d 1374 (1992) "A criminal statute that sweeps constitutionally protected free speech activities within its prohibitions may be overbroad and thus violate the First Amendment." State v. Stephenson, 89 Wash.App. 794, 800, 950 P.2d 38 (1998). When addressing an overbreadth challenge, this court considers (1) whether the challenged statute reaches constitutionally protected speech or expression and (2) whether it proscribes a real and substantial amount of speech. State v. Knowles, 91 Wash.App. 367, 372, 957 P.2d 797 (1998). "If the answer to those two questions is yes, [the court] must strike the statute as overbroad unless the regulation of protected speech is constitutionally permissible or it is possible to limit the statutes construction so that it does not unconstitutionally interfere with protected speech." Knowles, 91 Wash.App. at 372, 957 P.2d 797 (citing City of Seattle v. Huff, 111 Wash.2d 923, 925, 767 P.2d 572 (1989)). A law will be invalidated for overbreadth only if it is "substantially overbroad." Huff, 111 Wash.2d at 925, 767 P.2d 572.
The underlying statute, Possession of Depictions of Minors Engaged in Sexually Explicit Conduct, provides that: A person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a class C felony. RCW 9.68A.070. A "minor" is defined by RCW 9.68A.011(4) as "any person under eighteen years of age." Thus, RCW 9.68A.070 is different from the federal statute at issue in Ashcroft; it does not expand the crime of *62 possession of child pornography to images that "appear to" depict minors, i.e., images that might be afforded some level of constitutional protection. Luther also concedes that the statute legitimately regulates speech involving actual child pornography, which is unprotected by the First Amendment. See, e.g., State v. Myers, 133 Wash.2d 26, 32, 941 P.2d 1102 (1997).
However, Luther asserts that the crime of attempted possession of depictions of minors engaged in sexually explicit conduct is overbroad because it criminalizes possession of sexually explicit materials involving adults or materials that are not proven to feature an actual child. Luther argues that the broad sweep of attempted violation of child pornography laws may readily include behavior protected by the constitution. Luther argues that an attempt offense would criminalize the behavior of people who are trying to obtain pictures of people who only appear to be minors rather than actual child pornography. Thus, he asserts that the statute proscribes a real and substantial amount of protected speech and is overbroad.
This argument is without merit. As the State points out, the criminal attempt statute provides that a person is guilty of attempt to commit a crime if, with intent to commit a specific crime, he or she does any act that is a substantial step toward the commission of that crime. RCW 9A.28.020(1). Additionally, in order to justify a conviction for possession of child pornography, the "knowingly" element of RCW 9.68A.070 requires a minimum showing that the defendant was aware of the nature and content of the material he or she possessed. State v. Rosul, 95 Wash.App. 175, 184-85, 974 P.2d 916 (1999) ("Such a showing defeats overbreadth challenges by ensuring that innocent possessors of child pornography do not face prosecution."). Thus, a person who intends to possess only depictions of young-looking adults engaged in sexually explicit conduct could not be found guilty of attempted possession of child pornography because they would not possess the requisite mens rea. Although Luther argues the statute presents the possibility of convicting an individual of legal behavior, this is just not so.
Luther next argues that the crime of attempted violation of child pornography statutes would require persons on the Internet to verify the age of the person with whom he or she is speaking. Luther cites Reno v. American Civil Liberties Union, 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) for the proposition that verification of a person's age on an Internet chat room would substantially chill free speech. Reno, 521 U.S. at 874-86, 117 S.Ct. 2329 (holding that Communications Decency Act (CDA) was void for vagueness, overbroad, and effectively suppresses a large amount of constitutionally protected speech).
Reno did not make the specific ruling claimed by Luther. Further, the crime of attempted possession of child pornography does not require persons to verify the age of the persons with whom they are communicating. Rather, the crime requires that the person charged knowingly intends to possess depictions of minors engaged in sexually explicit conduct and takes a substantial step toward such possession, regardless of the age of the person with whom he or she is communicating. RCW 9.68A.070; RCW 9A.28.020(1). If there is no intent to possess child pornography regardless of the age of the person with whom a defendant is communicating, and no substantial step toward possession, then there could be no valid conviction for attempted possession of child pornography.
Finally, Luther unconvincingly argues that because no children are harmed in the possession of pornography that does not depict actual minors, the justification for infringing upon an adult's freedom of expression through conviction for attempted possession of child pornography evaporates. See, Ashcroft, 535 U.S. at 250-51, 122 S.Ct. 1389 (citing Ferber, 458 U.S. at 764-65, 102 S.Ct. 3348 ("[T]he distribution of descriptions or other depictions of sexual conduct, not otherwise obscene, which do not involve live performance or photographic or other visual reproduction of live performances, retains First Amendment protection")). Luther argues that a person who seeks to possess child pornography but does not succeed has not caused the harm required for his speech to *63 be without constitutional protection. Thus, he asserts that the crime of attempted possession is overbroad.
But as discussed above, it is not a defense to a charge of attempt that the crime was legally or factually impossible under the attendant circumstances. RCW 9A.28.020(2). Generally, an attempt conviction does not rely upon the ultimate harm achieved or whether the crime was actually committed. Rather, the crime of attempt relies upon the defendant's bad intent to commit the crime and the fact that the defendant would have committed the crime had the facts been as she or he perceived them to be. See, e.g., State v. Wojtyna, 70 Wash.App. 689, 696-97, 855 P.2d 315 (1993) (upholding conviction for attempted possession of a controlled substance based on purchase of what defendant thought was drugs from undercover police officer); Davidson, 20 Wash.App. at 898, 584 P.2d 401 (upholding conviction for attempted possession of stolen goods based on purchase of what defendant thought was stolen property from undercover police officer).
In a conviction for attempted possession of child pornography, we hold that the same is true. Were the facts as a defendant believed them to be, that he or she was obtaining unprotected materials that contained depictions of actual children engaged in sexually explicit conduct, then the defendant would have committed the crime of possession of child pornography. If Luther intended to do what he knew to be a criminal act, possession of child pornography, and took a substantial step toward completion of the crime, then the trial court could properly find him guilty of attempting to commit the underlying crime, even if he failed through no fault of his own.

II. Sufficiency of the Evidence

Luther finally asserts that the evidence presented at trial was insufficient to convict him of attempted possession of depictions of minors engaged in sexually explicit conduct. Luther specifically challenges the findings of fact contained in the trial court's Conclusions of Law 22 and 23:
22. The court finds that the defendant's intent was to possess depictions of minors engaged in sexually explicit conduct. The court makes this finding based upon the photographic images and the content of the on-line chats admitted into evidence.
23. The court finds that the defendant attempted to possess depictions of minors engaged in sexually explicit conduct based upon the substantial step he took toward obtaining photos of minors engaged in sexually explicit conduct, and the content of the on-line chats admitted into evidence. The court finds that the elements of the crime of possession of depictions of minors engaged in sexually explicit conduct is analogous to that of possession of a controlled substance. Both crimes require that the defendant knowingly have possession of an item. The court relies upon State v. Roby, 67 Wash.App. 741, 840 P.2d 218, and State v. Wojtyna, 70 Wash.App. 689, 855 P.2d 315 (1993).
Clerk's Papers at 114.
"A claim of insufficiency admits the truth of the States evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). A reviewing court must affirm a conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).[2]
To find the defendant guilty of attempted possession of child pornography, the State was required to show that Luther (1) intended to possess visual or printed matter depicting a minor engaged in sexually explicit conduct; and (2) engaged in any act that was a substantial step toward the commission of *64 that crime. RCW 9.68A.070; RCW 9A.28.020(1). It is not a defense to a charge of attempt that the crime was legally or factually impossible under the attendant circumstances. RCW 9A.28.020(2).
Luther does not contest that he engaged in sexually charged conversations via the Internet with persons who portrayed themselves as minors. Luther also does not contest that he sought out and received sexually explicit pictures of persons who claimed to be minors and appeared to be minors. As discussed above, Luther's argument that there was no way to determine the actual age of the persons with whom he was chatting, or the age of the persons in the photos, does not undermine his conviction if the evidence supports the conclusion that he specifically attempted to obtain child pornography. The evidence here clearly supports the conclusion that Luther intended to obtain such materials and took a substantial step toward obtaining such materials.
In the first chat room conversation, which took place on October 31, 2000 between Luther as "wombat1" and "eric16," Luther specifically asked if "eric16" had a camera and wanted to swap pictures. Luther's conversation, and the pictures entered into evidence, indicate that he received a picture of a young man in a jockstrap during this conversation. In Luther's second conversation with "eric16," which took place on November 15, 2000, Luther offered to masturbate "cam2cam" and stated that he would like to see a picture of "eric16"`s genitals. Luther offered to send a picture of his "bulge" if "eric16" would reciprocate. Luther then stated, "hehe well yeah.. but you are underage so have to be careful," and continued to encourage "eric16" to send him a picture, stating he was touching himself and waiting for the picture.
Luther argues that because the court entered an uncontested finding that chat room conversations cannot "be given credence," we cannot rely on his own conversations in the chat room as expressing his actual intent. This argument is unpersuasive. This court is required to view all the evidence and all reasonable inferences in a light most favorable to the State. This requires this court to consider the content of Luther's conversations with "eric16" as evidence of his true intent.
Viewing the chat room conversations in this record and their reasonable inferences in a light most favorable to the State inevitably requires the conclusion that any rational trier of fact could have found beyond a reasonable doubt that Luther both intended to obtain pictures of an underage boy engaged in sexual explicit conduct, and took a substantial step toward such possession. The evidence shows that Luther initially contacted "eric16" and that they swapped pictures. Luther then contacted "eric16" and asked if he would like to masturbate "cam2cam," requested a picture of "eric16"`s genitals, stated that he believed "eric16" was underage, and then continued to request a picture while stating he was touching his genitals, and gave his address to send the picture. This evidence was sufficient to find Luther guilty of attempted possession of depictions of minors engaged in sexually explicit conduct, and supported the findings of fact contained in the trial court's Conclusions of Law 22 and 23. Thus, the court did not err in finding Luther guilty of attempted possession of child pornography.
Finally, Luther endeavors to distinguish Wojtyna and Davidson, cases in which defendants were convicted of attempt crimes based on their purchase of what they believed was stolen property or illegal drugs from undercover police officers. Wojtyna, 70 Wash.App. at 696-97, 855 P.2d 315; Davidson, 20 Wash.App. at 894-95, 584 P.2d 401. Luther states that the same inferences cannot be drawn in his case because many if not most people pretend to be someone that they are not in chat rooms. The appeals courts in both Davidson and Wojtyna upheld the defendants' convictions because each of them intended to commit a criminal act and would have committed it had "the facts been as he perceived them" to be. Davidson, 20 Wash.App. at 898, 584 P.2d 401; Wojtyna, 70 Wash.App. at 696, 855 P.2d 315.
Similarly, the trial court here properly found that Luther believed that the images he attempted to possess contained depictions of minors. This is a pure question of fact, *65 and one that depends in large part upon the trier of fact's credibility determinations. Like in Davidson and Wojtyna, had the facts been as Luther perceived them to be  that he was communicating with an underage person and requesting sexually explicit photos from that person  then he would have committed the crime of possession of child pornography.
We reject Luther's arguments and affirm his conviction.
WE CONCUR: BAKER and COLEMAN, JJ.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] We are not called upon here to apply the standard of review set down by our state Supreme Court in State v. Kilburn, 151 Wash.2d 36, 52, 84 P.3d 1215 (2004) (rule of independent appellate review of portions of the record applies in First Amendment cases whenever an inquiry must be made into the factual context to decide if speech is unprotected). Here, we presume the speech contained in the materials that were possessed was protected. The attempt statute criminalizes the defendant's evil intent and conduct, not the materials he possessed.