[No. 76849-8.   En Banc.]

Argued February 7, 2006.      Decided May 18, 2006.

THE STATE OF WASHINGTON, *Respondent*, v. RONALD JOSEPH LUTHER, *Petitioner*.

*Nancy P. Collins* (of *Washington Appellate Project*), for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Dennis J. McCurdy, Deputy,* for respondent.

¶1 MADSEN, J. — Defendant Ronald Luther raises constitutional challenges to his conviction for attempted possession of child pornography. He also claims that there is insufficient evidence to uphold his conviction. We conclude that the statutes prohibiting the attempted possession of depictions of minors engaged in sexually explicit conduct

are not constitutionally overbroad, that Luther was not unlawfully convicted of possessing constitutionally protected materials, and that sufficient evidence supports his conviction. We affirm the Court of Appeals.

## FACTS

¶2 In February 2000, Seattle Police Department Detective Shannon Anderson received a tip through the National Center for Missing and Exploited Children that a person using the e-mail names of "Rjoeluther" and "wombat" was engaging in sexual conversations with minors over the Internet and exchanging pictures of minors in sexually explicit conduct—specifically, images of a 13-year-old boy, Steven. Anderson eventually obtained "wombat's" phone number, which turned out to be Luther's, and spoke with him by telephone. Luther admitted that he had chatted with someone named "Steve13" over the Internet but denied he had ever met Steven in person. Luther told Anderson that he thought Steven was 13 but he did not really know for sure; he thought "Steve13" typed too fast to be a 13-year-old.

¶3 On April 9, 2001, after an unrelated delay, Anderson and another detective went to Luther's home to continue the investigation. Luther told Anderson he remembered her from the conversation a year earlier, and Anderson told Luther that she was trying to clear up old cases. Without prompting, Luther began to talk about "Steve13" and viewing images of child pornography. Anderson asked if Luther would consent to a search of his computer, which Luther denied on the basis that his roommate would have to give permission because the computer belonged to him. Anderson then asked Luther if he would give a statement, and Luther agreed. Luther told Anderson that "Steve13" had sent him a video of himself and another boy, that both boys looked about 12 to 13 years old, but that there was nothing sexual in the video. Luther also said in his statement that "Steve" had sent Luther a picture "Steve"

claimed was of himself; the picture was of a " 'preteen or teen boy' " who was " 'naked from the waist down' " and showed a " 'closeup of his genitals.' " Report of Proceedings (RP) at 40 (Mar. 20, 2003) (quoting statement). Luther told Anderson that he had no way of knowing if the picture was really "Steve13" or " 'if Steve13 is really thirteen.' " *Id.* (quoting statement); *see* Clerk's Papers (CP) at 110-11 (Finding of Fact (FF) 5). Luther told Anderson that his online name was "wombat" or "wombat1." *Id.*; RP at 42 (Mar. 20, 2003).

¶4 Luther also stated that he had received images over the Internet that he considered to be child pornography. Luther said in his statement that he "deletes images of minors when he receives them" and that "six months ago he received pornographic images of minors on the computer, and that he deleted those images." CP at 111 (FF 7); *see* RP at 40-41 (Mar. 20, 2003). Luther stated that "he is 'not into' child pornography." CP at 111 (FF 7); *see* RP at 41 (Mar. 20, 2003).

¶5 Anderson then obtained a search warrant for the hard drives and related computer storage devices on the two computers in Luther's residence, and for the data on them. After the search warrant was executed, Seattle Police Detective Tom Giboney conducted a forensic search of the CPUs (central processing units). The detectives looked for and printed out images that appeared to be of minors engaged in sexually explicit conduct and on-line chats related to depictions of minors engaged in sexually explicit conduct. Luther was charged with eight counts[1] of possessing depictions of minors engaged in sexually explicit conduct contrary to RCW 9.68A.070. He waived his right to a jury trial.

¶6 At trial, the detectives testified that it was possible for a person to receive pictures through the Internet without knowing their contents until they were opened. However, they also testified that the images and on-line chats introduced into evidence had not been deleted, as Luther

---

[1] One count was dismissed during trial.

claimed; instead, they were active files that had been intentionally saved and accessed at later dates. The trial court examined the pictures and the on-line chat logs offered by the State and admitted as evidence. The pictures show young males engaged in sexually explicit conduct.

¶7 Only one of the logs introduced at trial is in the record on appeal. This log contains two chats between "wombat1" and "eric16." The first of the two chat conversations occurred October 31, 2000. During this conversation, Luther asks if "eric16" has a "cam" and wants to swap pictures. Ex. 20. The dialogue shows that Luther and "eric16" expressed interest in masturbating together, and that Luther received a picture of a young man in a "jockstrap" during the course of the conversation. In the second conversation, which occurred on November 15, 2000, Luther refers to the "jockstrap" picture sent to him and asks "eric16" about masturbating "cam2cam." *Id.* Luther also states he would like to see a picture of "eric16's" genitals. *Id.* Luther offers to let "eric16" see "his bulge" if "eric16" sends a picture. *Id.* Luther then states: "hehe well yeah . . . *but you are underage* so have to be careful." *Id.* (emphasis added). Luther continues to ask "eric16" to send a picture, and tells "eric16" that he is "rubbin" himself and waiting for a picture. *Id.*

¶8 Following trial, the court entered findings of fact and conclusions of law. The court concluded that Luther knowingly possessed the photographic images and the on-line chats introduced into evidence. The trial court found, however, that the State had failed to introduce evidence concerning the ages of the persons depicted in the photographic images or their identities and found that "[a]ll persons depicted appeared to be post-adolescent." CP at 113 (FF 14). The court concluded that there was reasonable doubt as to the ages of the persons depicted and therefore held that Luther was not guilty of seven counts of possession of depictions of minors engaged in sexually explicit conduct as charged.

¶9 The court also found that "based on the undisputed testimony . . . it is very common for people to lie to one

another and play fictional roles while chatting . . . . It is therefore impossible for a person chatting . . . to know anything about the person they are chatting with to any degree of certainty, including name, age, and even gender." CP at 111 (FF 6). Nevertheless, the trial court explained in its oral ruling, which was formally incorporated into the trial court's findings and conclusions:[2]

[I]t is my belief, beyond a reasonable doubt, that [Luther] was in fact making every attempt to secure photographs of boys under the age of eighteen in sexually explicit positions. In fact, it is my belief, beyond a reasonable doubt, that he thought he had them. He might have thought some of them might have been a ruse, but it is my belief, without any doubt at all, what he wanted was pictures of boys under the age of eighteen in sexually explicit positions. And, at least as to some of them, he certainly thought he had them. He might have had a doubt as to some because of the way people react and play games on the internet, ruses. But he thought he had them.

. . . .

The Court finds beyond a reasonable doubt that the defendant was out on the internet sites . . . conversing with persons that he believed to be young males under the age of eighteen. Through technology available over the internet he was able to secure electronic images, of photographs or of images created electronically of persons that he believed to be under the age of eighteen who were male and engaged in sexually explicit activities as defined by the statute.

RP at 23, 28 (Mar. 31, 2003).

¶10 Based on its finding that Luther intended to possess depictions of minors engaged in sexually explicit conduct, the court found that Luther attempted to possess depictions of minors engaged in sexually explicit conduct and took a substantial step toward obtaining such images. The trial court concluded that Luther was guilty of one count of

---

[2] *See State v. Kilburn*, 151 Wn.2d 36, 39 n.1, 84 P.3d 1215 (2004) (a trial court's oral decision may be considered where it is formally incorporated into the findings of fact and conclusions of law).

attempted possession of depictions of minors engaged in sexually explicit conduct.[3]

¶11 Luther appealed his conviction. The Court of Appeals affirmed. *State v. Luther*, 125 Wn. App. 176, 105 P.3d 56, *review granted*, 155 Wn.2d 1014 (2005).

## ANALYSIS

¶12 Luther contends that the offense of attempted possession of child pornography is constitutionally overbroad in violation of the first amendment to the United States Constitution and article I, section 5 of the Washington State Constitution.[4]

¶13 RCW 9.68A.070 provides that "[a] person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a class C felony."[5] The policy underlying the statute is set out in RCW 9.68A.001: "The legislature finds that the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance. The care of children is a sacred trust and should not be abused by those who seek commercial gain or personal gratification based on the exploitation of children."

¶14 RCW 9.68A.070 is unquestionably constitutional under United States Supreme Court precedent. In *New York v. Ferber*, 458 U.S. 747, 757, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982), the Court held that child pornography involving actual minors is outside the protection of the First

---

[3] A defendant may be convicted of attempting to commit a crime charged, even if attempt is not specifically charged. RCW 10.61.003 ("[u]pon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto, or of an attempt to commit the offense"); RCW 10.61.010 ("[u]pon the trial of an indictment or information, the defendant may be convicted of the crime charged therein, or of a lesser degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a lesser degree of the same crime"); *see State v. Wiggins*, 114 Wn. App. 478, 485, 57 P.3d 1199 (2002); *State v. Gallegos*, 65 Wn. App. 230, 234, 828 P.2d 37 (1992).

[4] While Luther relies on both the First Amendment and article I, section 5, he does not argue for a different, independent analysis under the state constitution.

[5] A "minor" is defined as a person under the age of 18. RCW 9.68A.011(4).

Amendment[6] because the "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." Thus, possession of materials depicting actual minors engaged in sexually explicit conduct may be criminalized, provided that the offense includes a scienter element. *Id.* at 764-65. RCW 9.68A.070 prohibits only possession of child pornography involving actual minors, and the statute contains a "knowingly" scienter element. Thus, RCW 9.68A.070 meets First Amendment requirements, *see State v. Myers*, 133 Wn.2d 26, 34, 941 P.2d 1102 (1997), and it plainly does not sweep within its prohibition protected speech.

¶15 Luther in fact concedes that RCW 9.68A.070 legitimately regulates speech involving child pornography. He maintains, however, that the crime of attempted possession of such materials is overbroad because it criminalizes possession of depictions of adults and materials that do not involve an actual child. He argues that the attempt offense sweeps within its scope behavior of individuals who seek only to obtain pictures of adults who appear to be minors or virtual images created without involvement of actual minors.[7] Thus, he reasons, the attempt crime encompasses behavior that the possession of child pornography statute does not.

¶16 The criminal attempt statute, RCW 9A.28.020(1), provides that "[a] person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." When applied in the context of RCW 9.68A.070, the criminal attempt statute permits a conviction only if the actor has the actual intent to commit

---

[6] Luther states that the state constitution is more protective of pure speech than the federal constitution but does not argue that a different state constitutional analysis applies in the context of child pornography from that applicable under the First Amendment.

[7] A law criminalizing speech is facially unconstitutional under the First Amendment " 'if it sweeps within its prohibitions constitutionally protected free speech activities.' " *City of Bellevue v. Lorang*, 140 Wn.2d 19, 26, 992 P.2d 496 (2000) (quoting *City of Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989)).

the underlying offense of knowingly possessing depictions of minors engaged in sexually explicit conduct. Thus, the criminal attempt statute does not permit a conviction for the constitutionally protected behavior that Luther describes.

¶17 Luther reasons, however, that the criminalization of child pornography depends upon the harm caused to children by that pornography, and when no child has in fact been harmed, the justification for infringing on freedom of expression vanishes. Thus, he maintains, the attempt statute sweeps too broadly because an individual can be convicted of the attempt crime when no child has actually been harmed. He relies on *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 241-42, 122 S. Ct. 1389, 152 L. Ed. 2d 403 (2002).

¶18 *Ashcroft* arose in response to federal legislation enacted in 1996. That year, in an effort to deal with evolving technology, Congress amended the federal child pornography law by enacting the Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. §§ 2251-2260. The CPPA extended federal prohibitions against child pornography to sexually explicit images that "appeared to be" of minors engaged in sexually explicit conduct but were produced without the involvement of actual minors; that is, the act extended the prohibition to "virtual child pornography," including computer-generated images. *Ashcroft*, 535 U.S. at 241-42 (discussing former 18 U.S.C. § 2256(8)(B) (1996)). The CPPA also defined child pornography to include any image that was pandered as depicting a minor engaged in sexually explicit conduct. *Id.* at 242-43 (discussing former 18 U.S.C. § 2256(8)(D)).

¶19 The Court in *Ashcroft* held both provisions overbroad and unconstitutional because the definitions in the CPPA included images produced without the harm to actual children that had led the Court in *Ferber* to hold that child pornography is unprotected speech. As the Court explained in *Ashcroft*, referring to *Ferber*'s emphasis on how child pornography is made rather than on what it communicates:

"where the speech is neither obscene nor the product of sexual abuse, it does not fall outside the protection of the First Amendment." *Id.* at 251.

¶20 Unlike the 1996 CPPA at issue in *Ashcroft*, Washington's child pornography prohibition does not permit a conviction for possession of virtual images of children engaged in sexually explicit conduct. Washington's statute is simply not comparable to the 1996 CPPA. In addition, commentators have suggested that problems posed by the difficulty in distinguishing actual child pornography from virtual child pornography, and the resulting problems in effectively enforcing child pornography laws, can be dealt with by utilizing federal criminal attempt laws. *See, e.g.,* Timothy J. Perla, Note, *Attempting to End the Cycle of Virtual Pornography Prohibitions*, 83 B.U. L. REV. 1209, 1231-36 (2003); Robert M. Sieg, *Attempted Possession of Child Pornography—A Proposed Approach for Criminalizing Possession of Child Pornographic Images of Unknown Origin*, 36 U. TOL. L. REV. 263 (2005).

¶21 Further, as the Court of Appeals reasoned, it is not a defense to an attempt crime that the crime was "legally or factually impossible under the attendant circumstances." *Luther*, 125 Wn. App. at 191, ¶ 31; *see* RCW 9A.28.020(2) (factual or legal impossibility is not a defense to an attempt offense). As the Court of Appeals also reasoned, an attempt conviction does not depend on the ultimate harm that results or on whether the crime was actually completed. *Luther*, 125 Wn. App. at 191, ¶ 31. Instead, an attempt conviction results because of the defendant's "bad intent" to commit the crime and the fact that had things been as the defendant believed them to be, he or she would have completed the offense. *Id.*

¶22 We agree. If a person attempts to obtain actual child pornography but the crime is not completed because the individual does not in fact receive the images sought or receives images that turn out to be images that are not of actual minors, the individual can nevertheless be convicted of the attempt crime because factual impossibility is not a

defense. Our recent decision in *State v. Townsend*, 147 Wn.2d 666, 57 P.3d 255 (2002), is instructive. There, the defendant used his computer to send e-mail messages to someone who he thought was a 13-year-old girl named "Amber," urging her to meet with him to have sex. "Amber" was actually an adult male police officer who set up a "sting" operation. The defendant was charged with and convicted of attempted second degree rape of a child. He challenged his conviction, arguing that he could never have taken a substantial step toward completion of the offense because "Amber" was in reality not a minor but instead was a police officer. *Id.* at 679. We disagreed because factual impossibility is not a defense to an attempt crime and therefore the fact that "Amber" was not in fact a 13-year-old girl was irrelevant. *Id.*

¶23 Of critical importance to Luther's case, we emphasized in *Townsend* that "[t]he attempt statute *focuses on the actor's criminal intent*, rather than the impossibility of convicting the defendant of the completed crime." *Id.* (emphasis added). The same is true of the offense of attempted possession of depictions of minors engaged in sexually explicit conduct—the critical focus is on the defendant's criminal intent and not on the fact that no minors were actually subjected to sexual exploitation or abuse. Generally, it makes no difference in the case of attempt offenses that the harm that the underlying criminal offense statute addresses does not occur.[8]

---

[8] Contrary to Luther's argument, harm to children results even where the attempt offense is concerned. Individuals seeking to obtain actual child pornography, as opposed to individuals seeking virtual pornography or seeking images of adults who appear young enough to be children, are part of the child pornography market with its sexual exploitation and abuse of children. The United States Supreme Court has reasoned that the government has a legitimate interest in drying up the child pornography market and has said that "[i]t is . . . surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product." *Osborne v. Ohio*, 495 U.S. 103, 109-10, 110 S. Ct. 1691, 109 L. Ed. 2d 98 (1990). In contrast, the Court has rejected the objective of eliminating the pornography market where the argument was advanced to justify a prohibition on virtual images. *Ashcroft*, 535 U.S. at 254. Individuals who attempt to obtain actual child pornography are part of the child pornography market whether they are successful in obtaining child pornography or not.

¶24 Luther also contends that the broad sweep of the attempt offense may include behavior protected by the constitution in that, he says, it compels an Internet user to verify the age of the person with whom he or she is speaking. This, he reasons, will have a chilling effect on conversations over the Internet. Here, for example, Luther says that "Steve13" turned out to be a 38-year-old man.[9] But whether "Steve13" was 13 or 38 is not relevant to the inquiry whether Luther tried to obtain child pornography. As the State points out, a person can have as sexually-charged a conversation over the Internet with another as he or she desires, without knowing the person's age, provided that the person does not have the actual intent to obtain child pornography.

¶25 We affirm the Court of Appeals' holding that RCW 9.68A.070 and RCW 9A.28.020 together are not constitutionally overbroad in prohibiting the attempted possession of depictions of minors engaged in sexually explicit conduct.

¶26 Luther next argues that the trial court impermissibly based its guilty verdict on computer images that he had a constitutional right to possess. While the trial court did consider the computer materials, Luther was not convicted of possession of child pornography. And as the Court of Appeals correctly observed, Luther has presented no authority for the proposition "that his possession of what might be constitutionally protected materials should somehow bar his conviction for attempted possession of constitutionally unprotected materials." *Luther*, 125 Wn. App. at 187, ¶ 19.

¶27 The fact that materials Luther possessed were considered as evidence of the crime of attempted knowing possession of depictions of minors in sexually explicit conduct does not render his conviction unconstitutional. It is true that "constitutionally protected behavior cannot be the basis of criminal punishment." *State v. Rupe*, 101 Wn.2d 664, 704, 683 P.2d 571 (1984) (defendant's death penalty

---

[9] The actual testimony was that the account holder of "Steve13's" e-mail address was a 38-year-old man.

reversed because the State introduced evidence of his possession of firearms where their use was unrelated to the criminal trial). Due process is violated by an impermissible use of constitutionally protected behavior. *State v. Hancock*, 109 Wn.2d 760, 767, 748 P.2d 611 (1988) (citing *Zant v. Stephens*, 462 U.S. 862, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1983)); *State v. Kendrick*, 47 Wn. App. 620, 626, 736 P.2d 1079 (1987). However, it is also true "that if evidence has probative value, its use is not prohibited simply because constitutional provisions may also be implicated." *State v. Hoffman*, 116 Wn.2d 51, 92, 804 P.2d 577 (1991) (citing *Kendrick*, 47 Wn. App. at 627). Evidence of constitutionally protected behavior that is relevant to issues in a case may be admitted, and "[t]he trial court has wide discretion in determining whether evidence concerning a criminal defendant's constitutionally protected behavior is relevant and admissible." *Hoffman*, 116 Wn.2d at 92; *Hancock*, 109 Wn.2d at 767 ("[t]he essential inquiry is one of relevance").

¶28 Thus, in *Kendrick*, the court rejected the defendant's argument that pictures of tattoos on his forearms were inadmissible at his murder trial because the tattoos were protected expression under the First Amendment. The court determined the photographs of the tattoos were probative of identity. *Kendrick*, 47 Wn. App. at 627-28. Similarly, the petitioner in *Dressler v. McCaughtry*, 238 F.3d 908 (7th Cir. 2001), challenged admission in his murder trial of videotapes and pictures of intentional violence and homosexual acts seized during execution of a search warrant at his home. The court rejected his free expression argument, reasoning that the petitioner was not convicted of possessing, distributing, or looking at the videotapes and pictures, and the evidence was admissible because it was relevant to his state of mind. *Id.* at 915.

¶29 Here, the trial court considered the images together with the on-line chats as evidence of Luther's intent to obtain depictions of minors engaged in sexually explicit conduct, i.e., as evidence of the attempt offense. From the log of the two on-line chats with "eric16," the trier of fact

could infer that Luther was trying to obtain sexually explicit images of an underage male. The trier of fact could also draw the inference that other images that Luther possessed were obtained in an effort to acquire images of underage males. That the images Luther actually possessed may not have been minors does not mean that he could not be convicted of attempted possession of depictions of minors engaged in sexually explicit conduct.

¶30 Luther also suggests that the Court of Appeals affirmed his conviction on the basis that he had the "bad intent" to obtain pornographic pictures when there was no proof that the individuals depicted were in fact minors. He urges that "[t]he First Amendment is violated when the government attempts to censor 'through the enactment of criminal laws intended to control an evil idea.'" Pet. for Review at 8 (quoting *Free Speech Coal. v. Reno*, 198 F.3d 1083, 1094 (9th Cir. 1999), *aff'd sub nom. Ashcroft*, 535 U.S. 234). The "bad intent" to which the Court of Appeals referred, however, is the specific intent to commit a criminal offense that is a required element of an attempt crime. *Luther*, 125 Wn. App. at 191, ¶ 31; *see* RCW 9A.28.020(1).

¶31 Luther was not unlawfully convicted of possession of constitutionally protected materials because he was not convicted of that offense at all. And, even if the images he possessed were constitutionally protected, they properly were considered as evidence relevant to the issue whether Luther attempted to commit that crime.

¶32 Finally, Luther contends that the evidence was insufficient to convict him of the crime of attempted knowing possession of depictions of minors engaged in sexually explicit conduct. In assessing the sufficiency of the evidence, the court "must view the evidence in the light most favorable to the State and decide whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Townsend*, 147 Wn.2d at 679 (citing *State v. Green*, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980)); *accord State v. Alvarez*, 105 Wn. App. 215, 220, 19 P.3d 485 (2001). A challenge to the sufficiency of the evidence admits

the truth of the State's evidence, *Id.* at 223. Unchallenged findings of fact are verities on appeal. *State v. Hill,* 123 Wn.2d 641, 644, 870 P.2d 313 (1994); *Alvarez,* 105 Wn. App. at 220. A challenged finding will be upheld if supported by substantial evidence in the record, *see Alvarez,* 105 Wn. App. at 220, viewing the evidence and the inferences therefrom most favorably to the State. "The findings of fact must support the elements of the crime beyond a reasonable doubt." *Id.*

¶33 To be found guilty of an attempt to commit a crime, the defendant must have the specific intent to commit a crime and take a substantial step toward commission of that crime. RCW 9A.28.020(1). To constitute a "substantial step," the conduct must be strongly corroborative of the actor's criminal purpose. *Townsend,* 147 Wn.2d at 679.

¶34 Luther challenges only conclusions of law 22 and 23 insofar as they constitute findings of fact. *See Valentine v. Dep't of Licensing,* 77 Wn. App. 838, 846, 894 P.2d 1352 (1995) (a finding of fact denominated as a conclusion of law will be treated as a finding of fact); *State v. Kilburn,* 151 Wn.2d 36, 52, 84 P.3d 1215 (2004) (treating a finding of fact misidentified as a conclusion of law as a finding of fact). In conclusion of law 22, the trial court found "that the defendant's intent was to possess depictions of minors engaged in sexually explicit conduct." CP at 114 (Conclusion of Law (CL) 22). As already noted, the court made this finding "based upon the photographic images and the content of the on-line chats admitted into evidence." *Id.* In conclusion of law 23, the trial court found "that the defendant attempted to possess depictions of minors engaged in sexually explicit conduct based upon the substantial step he took toward obtaining photos of minors engaged in sexually explicit conduct, and the content of the on-line chats admitted into evidence." CP at 114 (CL 23).

¶35 Luther emphasizes that the trial court also entered uncontested findings that it is "very common for people to lie to one another and play fictional roles while chatting"

and that it is "impossible for a person chatting . . . to know anything about the person they are chatting with to any degree of certainty, including name, age and even gender." CP at 111 (FF 6). Luther reasons that the chat conversations were inherently unreliable, as the trial court found, and cannot be given credence. Therefore, Luther contends, the Court of Appeals erred in relying on the chat log of the two conversations he had with "eric16," which it found to be sufficient evidence to support Luther's conviction. *See Luther*, 125 Wn. App. at 193-94, ¶¶ 37-39. Luther maintains that "eric16's" on-line name cannot be taken as evidence of his age and that "eric16" never revealed or hinted at his age and never portrayed himself as a minor. Further, Luther says, the Court of Appeals was not entitled to presume that Luther's statement about "eric16" being underage was true, given the trial court's findings about misrepresentations and role-playing on the Internet.

¶36 Despite the trial court's findings about lying, fictionalizing, and role-playing on the Internet, that court also explained that it believed beyond a reasonable doubt that while Luther might have had some doubt about some of the images he had "because of the way people react and play games on the internet, ruses," nevertheless "at least as to some of them, he certainly thought he had" "pictures of boys under the age of eighteen in sexually explicit positions." RP at 23 (Mar. 31, 2003).

¶37 Additionally, the chat log of the conversations between Luther and "eric16" indicate that a picture of a young male in a "jockstrap" was transferred during the first conversation and, during the second conversation, Luther refers to that picture and cautions that "eric16" has to be careful because he is underage. This tends to validate the conversations. As the Court of Appeals reasoned, the evidence must be viewed in the light most favorable to the State, and thus the court must "consider the content of Luther's conversations with 'eric16' as evidence of his true intent." *Luther*, 125 Wn. App. at 194, ¶ 38. Luther's cautioning "eric16" about being careful because he was

"underage" and his requests for a picture of "eric16's" genitals, Exs. 19-20, is evidence of Luther's intent to obtain pictures of a minor engaged in sexually explicit conduct, as well as evidence of his having taken a substantial step toward committing the crime of possession of child pornography.

¶38 As to Luther's claims that "eric16's" name cannot be considered as evidence of his age and that "eric16" never gave his age, we do not agree that the State was required to prove that "eric16" was in fact a minor. Instead, the relevant question is whether Luther intended to obtain images of minors. As the Court of Appeals said, "Luther's argument that there was no way to determine the actual age of the persons with whom he was chatting, or the age of the persons in the photos, does not undermine his conviction if the evidence supports the conclusion that he specifically attempted to obtain child pornography." *Luther*, 125 Wn. App. at 193, ¶ 36. In addition, while the video Luther admitted receiving was not of a sexual nature, the evidence that he chatted with "Steve13" and received the video, and the inferences from this evidence, viewed in the light most favorable to the State, show his interest in communicating with and about minors.

¶39 Luther also contends his case is unlike other cases where factual impossibility was not a defense to an attempt crime charge. In *State v. Wojtyna*, 70 Wn. App. 689, 855 P.2d 315 (1993), the defendant was convicted of attempted possession of cocaine where he purchased a powdered substitute from an undercover police officer. In *State v. Davidson*, 20 Wn. App. 893, 584 P.2d 401 (1978), the defendant was convicted of attempted possession of stolen property where he purchased items from an undercover police officer that the officer told him had been stolen. Luther contends that unlike the situations in *Wojtyna* and *Davidson* he was not frustrated in his efforts to commit a crime by the police or an adult posing as a minor, but instead he did all that he intended and yet his actions did not amount to a punishable offense.

¶40 It is not necessary that an individual be frustrated by an undercover officer or other person in the individual's effort to commit a crime in order to be convicted of an attempt; the elements of the offense do not require that there be interference by another person. Further, the question whether Luther did "all he intended," Pet. for Review at 14, is a question of fact that the trial court resolved against him. That is, the question is whether Luther intended to possess child pornography.

¶41 Luther also argues that the trial court "did not believe [that he] possessed images that contained actual children" and the trial court never resolved "the contested issue" whether he "possessed or tried to possess virtual images." Pet'r's Suppl. Br. at 14-15. First, the trial court found only that the State had not proved beyond a reasonable doubt that the images were of minors. Second, the trial court did not have to enter findings as to whether Luther sought to obtain *virtual* images since the relevant question was whether Luther intended to obtain child pornography containing images of actual minors and took a substantial step toward doing so. On these questions the trial court did enter findings.

¶42 Further, with regard to whether the pictures that Luther possessed were pictures of actual children, courts acting as triers of fact often rely on visual observations to determine whether an individual depicted is a minor. *See United States v. Riccardi*, 405 F.3d 852, 870 (10th Cir.) (while expert testimony may be necessary in some cases to establish that a person depicted is a minor, this judgment is made on a case-by-case basis and, in some cases, the trier of fact may determine beyond a reasonable doubt whether the person depicted is a minor without the assistance of an expert), *cert. denied*, 126 S. Ct. 299, 163 L. Ed. 2d 260 (2005); *United States v. Katz*, 178 F.3d 368, 372-73 (5th Cir. 1999) (same); *Commonwealth v. Robertson-Dewar*, 829 A.2d 1207, 1212-13 (Pa. Super Ct. 2003) (same); *State v. May*, 362 N.J. Super. 572, 592-95, 829 A.2d 1106 (App. Div. 2003) (same). While the trial judge here did not do that, he could

have because some of the photographs clearly appear to be pictures of minors.

¶43 Finally, we reject Luther's argument that the evidence must be assessed under the rule of independent review described in *Kilburn*, 151 Wn.2d at 49-52. There, in accord with binding United States Supreme Court precedent, we held that in First Amendment cases a reviewing court must independently evaluate the critical facts that relate to the question whether certain expression is unprotected speech. The issue before the court here is not whether the materials Luther possessed were protected or unprotected expression (he was acquitted of actual possession of child pornography), but whether there was sufficient evidence that he attempted to obtain materials that were unprotected expression.[10]

¶44 We agree with the Court of Appeals that sufficient evidence supports Luther's conviction.

¶45 The Court of Appeals is affirmed.

ALEXANDER, C.J., and C. JOHNSON, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

---

[10] Luther also argues that a person's intent for purposes of the First Amendment must be evaluated under an objective framework, and the court had to determine whether a reasonable person in his shoes would have believed he knowingly possessed images of actual children. He points out that the trial court made no such findings. However, this case does not involve the question whether Luther actually possessed child pornography, but rather whether he intended to do so. The crime of attempt requires the State to prove that the defendant had the "intent to commit a specific crime." Further, Luther does not cite any authority related to possession of child pornography that requires an objective standard.