[No. 85765-2.   En Banc.]
Argued October 18, 2011.    Decided February 23, 2012.

THE STATE OF WASHINGTON, *Respondent*, v. ROOSEVELT RAFELO JOHNSON, JR., *Appellant*.

896

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Ann M. Summers, Deputy*, for respondent.

*Randall A. Sutton* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

¶1 WIGGINS, J. — Roosevelt Rafelo Johnson Jr. was convicted by a jury of attempted promotion of commercial

sexual abuse of a minor based on his interaction with two undercover police officers. The female undercover officers were posing as 17-year-old girls, though both were in their mid to late 20s. We hold that a defendant can be found guilty of attempted promotion of commercial sexual abuse of a minor when the defendant intends the criminal result of the crime, believes that the intended victim is a minor even if the victim is an adult posing as a minor, and takes a substantial step toward the commission of the crime. The criminal result of promoting commercial sexual abuse of a minor is to advance or profit from the sexual exploitation of minors for financial compensation. Because the evidence was more than sufficient to show that Johnson intended to commit the crime and took a substantial step toward completion, we affirm his conviction.

## FACTS AND PROCEDURAL HISTORY

¶2 In July 2009, Seattle Police Sgt. Ryan Long organized a sting operation targeting the commercial sexual abuse of minors in the Westlake Mall area of Seattle. It was the first time Sgt. Long had run an operation with undercover police officers posing as minors to target recruiters of "children into prostitution." 2 Verbatim Report of Proceedings (RP) at 185. Sgt. Long chose two female decoy officers who looked young: Officer J. Morris (Officer M) and Officer A. Johnson (Officer J). He instructed Officers M and J to hang out at the Westlake Mall and act like 17 year olds. After two hours with no result, Sgt. Long instructed Officers M and J to stroll toward the nearby McDonald's restaurant. Roosevelt Johnson and Lester Payton approached the officers en route to McDonald's.

¶3 When Johnson asked their ages, Officers M and J told him they were 17. Johnson acknowledged that both women were 17. After the officers agreed to hang out with Johnson and Payton, Johnson told them that the two men were making money illegally. Payton suggested that the two

officers could also make money for himself and Johnson by selling sexual favors. Johnson attempted to arrange a training session with the two officers and one of his experienced girls. The officers left the area after Johnson and Payton told them to go to Aurora Avenue to walk up and down the street soliciting sexual transactions and gave them instructions on how much to charge for different sexual services. Uniformed police officers arrested Johnson and Payton shortly thereafter. The two men were tried together.

¶4 The jury was instructed on both attempted promotion of commercial sexual abuse of a minor and attempted promotion of prostitution, a lesser included offense. During deliberations, the jury inquired whether a conviction on the greater charge required that the defendants believed the officers were 17 or whether it was enough that the defendants had been told the officers were 17. The court referred the jury to instruction 18, defining "knowledge." The jury ultimately convicted Johnson of attempted promotion of commercial sexual abuse of a minor. Johnson argued on appeal that because the victims were both over 18 years old, the State had not presented sufficient evidence to convict him of attempted promotion of commercial sexual abuse of a minor. The Court of Appeals certified the matter to this court and we accepted certification.

## ANALYSIS

¶5 The meaning of a statute is a question of law that we review de novo. *State v. Keller*, 143 Wn.2d 267, 276, 19 P.3d 1030 (2001). In assessing whether the evidence was sufficient to support a conviction, we view the evidence in the light most favorable to the State and decide whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Luther*, 157 Wn.2d 63, 77, 134 P.3d 205 (2006).

## I. Substantial Evidence Supports Johnson's Conviction

¶6  Johnson was convicted of attempting to promote the commercial sexual abuse of a minor. "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). The intent required is the intent to accomplish the criminal result of the base crime. *State v. DeRyke*, 149 Wn.2d 906, 913, 73 P.3d 1000 (2003). We look to the definition of the base crime for the requisite criminal result. *See id.* A substantial step is an act that is "strongly corroborative" of the actor's criminal purpose. *Luther*, 157 Wn.2d at 78. Neither factual nor legal impossibility is a defense to criminal attempt. RCW 9A.28.020(2).

¶7 A person promotes commercial sexual abuse of a minor "if he or she knowingly advances commercial sexual abuse of a minor or profits from a minor engaged in sexual conduct." RCW 9.68A.101(1). The statute further defines advancing commercial sexual abuse of a minor as any conduct, by someone other than the minor or the customer, "designed to institute, aid, cause, assist, or facilitate an act or enterprise of commercial sexual abuse of a minor." RCW 9.68A.101(3)(a). A person, other than the minor or the customer, profits from commercial sexual abuse of a minor by accepting or receiving "money or other property pursuant to an agreement or understanding with any person whereby he or she participates or will participate in the proceeds of commercial sexual abuse of a minor." RCW 9.68A.101(3)(b).

¶8 Thus, the prosecution was required to prove that Johnson (1) intended to either advance or profit from the commercial sexual abuse of a minor and (2) took a substantial step toward doing so. Johnson challenges the sufficiency of the evidence to support his conviction.

¶9 Here, the State proved that Johnson asked the officers how old they were, that each officer told him that she

was 17 years old, and that Johnson acknowledged that each officer said that she was 17. After he learned that they were 17 years old, Johnson asked Officer J if she was interested in working for him as a " 'ho.' " I RP at 87. Johnson explained to Officer J what a "ho" does (pleasure men for money), what type of customer they should seek, and that they should bring the money back to him. *Id.* at 92-93. Johnson instructed both officers that each would have to choose whether to work for him or for Payton. Johnson even tried to arrange training for the two officers from one of his experienced girls.

¶10 A challenge to the sufficiency of the evidence admits the truth of the State's evidence. *Luther*, 157 Wn.2d at 77-78. Based on this evidence, it is clear that a rational trier-of-fact could conclude beyond a reasonable doubt that Johnson intended to both advance and profit from the sexual exploitation of two women who claimed to be 17 years old and that he took a substantial step in that direction. Johnson admits as much but bases his argument solely on the fact that the officers were not actually 17.

## II. Johnson's Arguments Amount to a Claim of Impossibility, Which Is Not a Defense to Criminal Attempt

¶11 Johnson's challenge to the sufficiency of the evidence fails because it is essentially an impossibility defense. He argues that the verdict was not supported by substantial evidence because the officers were both adults and there was no evidence of an actual minor victim because neither officer was actually 17. In other words, it was impossible for him to commit the crime with these officers. But our legislature has rejected both factual and legal impossibility as a defense to criminal attempt. RCW 9A.28.020(2).

¶12 We have held that this rejection of impossibility as a defense applies to attempted crimes against minors. *Lu-*

*ther*, 157 Wn.2d at 73-74 (impossibility not a defense to attempted possession of child pornography where the defendant did not receive the images he sought or where the images the defendant received were not of actual minors); *State v. Townsend*, 147 Wn.2d 666, 679, 57 P.3d 255 (2002) (defendant took a substantial step toward rape of a 13-year-old child that he met in an on-line chat room even though the victim was actually a male detective pretending to be a 13-year-old girl because impossibility is not a defense to criminal attempt). We similarly reject Johnson's attempt to raise an impossibility defense here.

### III. Our Dictum in *Patel* Does Not Compel Us To Allow Johnson To Raise an Impossibility Defense

¶13 Johnson argues that our recent decision in *State v. Patel*, 170 Wn.2d 476, 242 P.3d 856 (2010), requires that the State prove an actual victim is under the age of 18. Johnson bases his argument on the cautionary statement in *Patel* that " 'a defendant who attempts to have sex with a person he believes is underage but is actually an adult may not be convicted' " of attempted child rape. Br. of Appellant at 10 (quoting *Patel*, 170 Wn.2d at 485).

#### The Road to *Patel*

¶14 To understand *Patel*, we begin with our earlier decision in *State v. Dunbar*, 117 Wn.2d 587, 817 P.2d 1360 (1991). The defendants in *Dunbar* had fired shots from a moving car into a crowd. *Id.* at 589. Although no one in the crowd was injured, Dunbar and his codefendant were charged with attempted first degree murder by extreme indifference, creating a grave risk of death under RCW 9A.32.030(1)(b). 117 Wn.2d at 589. We held that Dunbar could not be convicted of attempted first degree murder by extreme indifference. To be guilty of attempt, one must act "with intent to commit a specific crime . . . ." RCW 9A.28.020(1). So to be guilty of attempted murder, one must intend the death of another person. But the crime of murder

by indifference does not require intent to cause death. *Dunbar*, 117 Wn.2d at 594-95. Therefore, one cannot be guilty of attempted first degree murder by extreme indifference. *Id.* at 595.

¶15 We quoted in *Dunbar* a concession by the parties: "All parties concede one may not attempt a nonintent crime." *Id.* at 590. The defendant relied on this statement in the subsequent case of *State v. Chhom*, 128 Wn.2d 739, 911 P.2d 1014 (1995). Chhom was charged with attempted rape of a child when he tried to force his penis into the mouth of a nine-year-old boy. *Id.* at 740. Chhom argued that knowledge of the victim's age was not an element of the offense and reasoned from the "nonintent crime" statement in *Dunbar* that he could not be guilty of attempted rape of a child because there was no intent required as to the victim's age. *Id.* at 741. We rejected Chhom's argument, reasoning that the intent required for attempted rape of a child is the intent to have sexual intercourse: "the attempt statute brings into the crime of rape of a child the element of 'the intent to have sexual intercourse' (the criminal result) but it does not add anything to the remaining strict liability requirements (perpetrator and victim not married, and the ages of the victim and perpetrator). As to these elements, attempted rape of a child is still a strict liability offense." *Id.* at 743.

¶16 We again considered this issue in *Townsend*, 147 Wn.2d 666. A Spokane police detective set up a sting operation by establishing a " 'Hotmail' " Internet e-mail account with a screen name of " 'ambergirl87' " (Amber), a fictitious 13-year-old girl. *Id.* at 670. Posing as Amber, the detective communicated via the Internet with defendant Townsend, who arranged to meet Amber at a motel and to have sexual intercourse with her. *Id.* at 671. Townsend was charged with attempted second degree rape of a child. He argued that he could not be convicted of attempt, which requires taking a substantial step toward completing the crime, RCW 9A.28.020(1), because "Amber" did not exist. 147

Wn.2d at 679. We characterized his argument as one of impossibility, which is not a defense under the attempt statute. RCW 9A.28.020(2). We held that it makes no difference that Amber did not exist because Townsend intended to commit the crime and took a substantial step toward completion. 147 Wn.2d at 679.

¶17 *Chhom* and *Townsend* were followed by *Patel*, 170 Wn.2d 476, with facts virtually identical to *Townsend*: a sting operation by the same Spokane police detective posing as an underage girl over the Internet. Like Townsend, Patel was arrested when he arrived at the proposed rendezvous. Also like Townsend, Patel was convicted of attempted second degree rape of a child. Patel argued an apparent contradiction between *Chhom*, in which the State was not required to prove that the defendant knew the age of the victim in order to convict the defendant of attempted rape of a child, and *Townsend*, in which the State was required to prove that the defendant intended to have sexual inter-course with an imaginary victim whom he believed to be underage in order to convict of attempted rape of a child: "Patel sees an apparent contradiction in these two holdings, suggesting that either the defendant's belief about the victim's age is relevant (*Townsend*) or it is not (*Chhom*) but that it cannot be both." 170 Wn.2d at 483.

¶18 A plurality of the court in *Patel* reconciled this arguable inconsistency, holding that in the case of an actual victim, the State need not prove that the defendant believed the victim to be underage, but in the case of a fictitious victim, the State must prove the defendant's specific intent to have intercourse with an underage victim. *Id.* at 484. However, the plurality then addressed a hypothetical fact pattern, which has arisen in the case now before us: "a defendant who attempts to have sex with a person he believes is underage but is actually an adult may not be convicted under either [*Chhom* or *Townsend*]—because the victim actually existed and factual impossibility is not a concern." *Id.* at 485. Here, defendant Johnson relies on this

statement, pointing out that the undercover police officers were both adults.

¶19 The actual holding of *Patel* is correct and we reaffirm it—a defendant who intends to have sexual intercourse with a fictitious, underage person and takes a substantial step in that direction can be convicted of attempted rape of a child. The plurality's statement about attempted sexual intercourse with an adult whom the defendant believes to be underage was unnecessary to the resolution of *Patel* and is nonbinding dictum. *Ass'n of Wash. Bus. v. Dep't of Revenue*, 155 Wn.2d 430, 442 n.11, 120 P.3d 46 (2005). It is not binding for the additional reason that only four justices agreed with the statement. A plurality has little precedential value and is not binding. *See In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 302, 88 P.3d 390 (2004). Finally, the language in question was rejected by five members of the court that did not join the plurality. *Patel*, 170 Wn.2d at 486 (Madsen, C.J., concurring) (rejecting the cited language as internally inconsistent and undermining the rationale of the lead opinion); *id.* at 490 (Sanders, J., concurring) (rejecting the distinction between fictitious and actual victims).

¶20 We now disapprove the *Patel* dictum because it can be traced back to the misstatement in *Dunbar* that one cannot commit attempt of a "nonintent" crime. *Dunbar*, 117 Wn.2d at 590.

¶21 Our statement in *Dunbar* is erroneous because it conflates the elements of criminal attempt and the elements of the base crime. Criminal attempt has two elements: intent to commit the base crime and a substantial step toward doing so. RCW 9A.28.020(1). While we look to the base crime to define the specific intent element of criminal attempt, the elements of criminal attempt do not define the base crime. The *Dunbar* court correctly identified death as the criminal result of first degree murder by extreme indifference. 117 Wn.2d at 589. The court could have stopped there and held that where the prosecution

cannot make a prima facie showing of intent to kill, the charge of attempted first degree murder cannot stand. Instead the court reversed the analysis: it applied the intent element of criminal attempt to first degree murder by reckless indifference and held that because the base crime did not require the mental state of intent to kill, it could not serve as a base crime for attempted murder. *Id.* at 594-95.

¶22 It is not necessary that the base crime contain the same mental state element as the crime of attempt in order to prosecute the attempt crime. The mental state required for criminal attempt (specific intent) is the highest mental state requirement defined by statute. *See* RCW 9A.08.010 (defining the four mental states in declining order of seriousness: intent, knowledge, recklessness, and criminal negligence). We require the highest possible mental state for criminal attempt because criminal attempt focuses on the dangerousness of the actor, not the act. *See* 2 pt. 1 MODEL PENAL CODE AND COMMENTARIES cmt. 1, at 298-99, cmt. 2, at 303 (1985) (MPC & CMTS.); JUDICIARY COMM. OF WASH. LEGIS. COUNCIL, REVISED WASHINGTON CRIMINAL CODE 104-05 (Dec. 3, 1970) (JUDICIARY COMM. DRAFT). Because we do not punish "evil thoughts alone," the law of criminal attempt does not punish "conduct that does not itself strongly corroborate the actor's criminal objective." MPC & CMTS. cmt. 1, at 298-99. Our legislature accomplished this by requiring both intent to commit the base crime and a substantial step toward that crime.

¶23 Although the *Dunbar* holding is problematic, it supports the legislature's policy choice in adopting the revised criminal code in 1975. This revision was the first comprehensive review and reform of the criminal code since 1909. 1975 FINAL LEGISLATIVE REPORT, 44th Wash. Leg. at 243. It was based in part on the *Model Penal Code. Id.* The *Model Penal Code* defines criminal attempt more broadly than does RCW 9A.28.020:

A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:

(a) purposely engages in conduct that would constitute the crime if the attendant circumstances were as he believes them to be; or

(b) when causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing or with the belief that it will cause such a result without further conduct on his part; or

(c) purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

MPC & CMTS. § 5.01(1), at 295-96.

¶24 One major effect of this definition was to "sweep[ ] aside the defense of impossibility." MPC & CMTS. at 295. Our legislature clearly agreed that impossibility should not be a defense. RCW 9A.28.020(2); *see also* JUDICIARY COMM. DRAFT cmt. 2, at 105. But the drafters of the *Model Penal Code* also intended this definition of criminal attempt to extend culpability to defendants like Dunbar.[1] MPC & CMTS. cmt. 2, at 304-05. We rejected this extension of culpability. JUDICIARY COMM. DRAFT cmt. 1, at 103 (stating that the two attempt definitions in subsections (a) and (b) of MPC 5.01(1) "appear too broad in their potential application"); *see also* MPC & CMTS. cmt. 2, at 305 ("Only a minority of recent revisions have explicitly followed the Model Code on this point.").

¶25 Therefore, the *Dunbar* court was correct that RCW 9A.32.030(1)(b) could not serve as a base crime for criminal attempt. But the court reached that holding by incorrectly

---

[1] The comment to the *Model Penal Code* section 5.01 gives the example of a person who intends to demolish a building, knowing that people are living there. MPC & CMTS. cmt. 2, at 305. The comment argues that there is not a sufficient basis for distinguishing between the dangerousness of the person who succeeds in killing the people in the building and the person whose bomb was defective because "the actor has done all within his power to cause [the criminal] result to occur." *Id.*

applying the mental state required for criminal attempt to the base crime. Therefore, we limit *Dunbar's* holding to attempted first degree murder by extreme reckless indifference under RCW 9A.32.030(1)(b).

¶26 Relying on *Dunbar*, the defendant in *Chhom*, 128 Wn.2d at 741, argued that because rape of a child had no mental state element, it could not serve as a base crime for criminal attempt. Instead of recognizing the error in *Dunbar's* reasoning, we redefined the criminal result of rape of a child as mere "sexual intercourse" rather than "sexual intercourse with a child." *See Chhom*, 128 Wn.2d at 741. We reasoned that attempted rape of a child could therefore remain a "strict liability" offense with regard to the age of the child. *Id.* at 743.

¶27 But criminal attempt is not a strict liability offense. Even the conduct element of criminal attempt (substantial step) must be strongly corroborative of the actor's criminal intent. *Luther*, 157 Wn.2d at 78. Moreover, sexual intercourse alone is not criminal. The general rape statutes require forcible compulsion or an unwilling or incapacitated victim. *See* RCW 9A.44.040, .050, .060. Similarly, rape of a child requires that the victim be a child of a certain age and a certain number of months younger than the perpetrator. *See* RCW 9A.44.073, .076, .079. Just as the criminal result of first degree rape is sexual intercourse by forcible compulsion, *DeRyke*, 149 Wn.2d at 913, the criminal result of rape of a child is sexual intercourse with a child.[2] Accordingly, we disapprove of our statement in *Chhom*, 128 Wn.2d at 741, defining the criminal result of rape of a child as sexual intercourse alone.

---

[2] Interestingly, *DeRyke* distinguished first degree rape from first degree rape of a child based on *Chhom's* definition of the criminal result of the latter offense. *DeRyke*, 149 Wn.2d at 913. While under *Chhom* rape of a child requires only the intent to have sexual intercourse, the first degree rape statute requires proof of forcible compulsion. *DeRyke*, 149 Wn.2d at 913. However, the child rape statutes also require proof of the age of the child victim. This requirement strongly suggests that the age of the victim is also relevant to the intent element of attempted rape of a child.

¶28 Indeed, the *Townsend* court held that the criminal result of rape of a child was sexual intercourse with a minor, without any reference to or acknowledgement of the holding in *Chhom*. *Townsend*, 147 Wn.2d at 679-80; *Patel*, 170 Wn.2d at 482. It was the *Patel* plurality's attempt to harmonize this fundamental dissonance between *Chhom* and *Townsend* that resulted in the fractured opinion.

¶29 Accordingly, it is clear that the age of the victim of child rape—either the child victim's actual age or the defendant's belief in a fictitious victim's age—is material to proving the specific intent element of attempted child rape. The State must prove the age of the intended victim to prove that the defendant intended to have sexual intercourse with a child. However, the State's method of proving the intended victim's age will be different depending on whether the victim is an actual child or a fictitious child.

¶30 An actual child's age can be proved by extrinsic sources, a birth certificate for example. Having proved the intended victim's age, the State must show that the defendant intended to have sexual intercourse with this victim in order to prove that the defendant intended to have sexual intercourse with a child. But a fictitious victim exists only within the context of the sting operation; her age can be established only by publication and receipt of the information. Thus, the State must show that the defendant knew the perceived victim's age, usually by proving that the perceived victim communicated her age and the defendant received the information. The State must then make the same proof of the defendant's intent: that he intended sexual intercourse with this victim.[3]

---

[3] RCW 9A.44.030(2) provides a defense to rape of a child: "the defendant must prove by a preponderance of the evidence that at the time of the offense the defendant reasonably believed the alleged victim to be the age identified in subsection (3) [for a defendant charged with first, second, or third degree rape of a child]." This reasonable belief must be "based upon declarations as to age by the alleged victim." *Id.* This defense to rape of a child has a corollary that applies to promoting commercial sexual abuse of a minor:

¶31 Here, the base crime for Johnson's conviction of criminal attempt was promoting commercial sexual abuse of a minor. This crime is similar to rape of a child in that lack of knowledge of the minor's age is not a defense to the crime. *Compare* RCW 9A.44.030(2), *with* RCW 9.68A.110(3). However, Johnson was charged with *attempted* promotion of commercial sexual abuse of a minor. And in the context of criminal attempt, the victim's age is similarly material to proving the defendant's intent to accomplish the criminal result of promoting commercial sexual exploitation of minors. Johnson's victims were undercover police officers pretending to be 17. Therefore, Johnson's knowledge of their stated ages was material: the State was required to prove that Johnson believed his victims to be minors to prove that he intended to advance or profit from the commercial sexual exploitation of a minor. At Johnson's trial, each of the officers testified that she told Johnson that she was 17, that Johnson acknowledged it, and that afterward he asked them to work for him as a " 'ho.' " RP at 92, 299. This evidence is sufficient.

## CONCLUSION

¶32 We affirm Johnson's conviction of attempted promotion of commercial sexual abuse of a minor because the evidence at his trial, viewed in the light most favorable to

---

It is a defense, which the defendant must prove by a preponderance of the evidence, that at the time of the offense, the defendant made a reasonable bona fide attempt to ascertain the true age of the minor by requiring production of [a valid government identification document] and did not rely solely on the oral allegations or apparent age of the minor.

RCW 9.68A.110(3).

Both of these provisions are defenses to crimes for which lack of knowledge of the victim's age is not a defense. Neither are defenses to criminal attempt. We decline to speculate as to the effect of these defenses on the intent element of criminal attempt because that issue is not before us on the facts of this case.

the State, was more than sufficient to convince a rational trier-of-fact of Johnson's guilt.

MADSEN, C.J.; C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ.; and ALEXANDER, J. PRO TEM., concur.