# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49239-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JEREMY ARTHUR OVERTON, | |
| Appellant. | |

MAXA, J. – Jeremy Overton appeals his conviction of attempted second degree rape. He argues that the State failed to prove that he intended to have sexual intercourse, a necessary element of the charge. We hold that the State presented sufficient evidence to establish Overton's intent. Accordingly, we affirm.

## FACTS

On January 25, 2014, KS, her boyfriend Toby Clark, Adam Thayer, and Monica Trabue spent the evening together to celebrate KS's promotion at work. They consumed alcohol at KS and Clark's residence before going to several bars in Olympia. Overton, one of KS's coworkers, met the group at the first bar and eventually drove them back to KS and Clark's residence at 2:00 AM. They continued drinking there. KS was intoxicated.

While at KS and Clark's home, Overton kept offering back and foot rubs to KS and Trabue and was persistent in giving them even though they refused multiple times. Trabue felt

uncomfortable and went home rather than spend the night as she had planned. Overton's conduct also made KS uncomfortable.

Eventually, KS went upstairs and went to bed in the master bedroom, first changing into running clothes because she was running in the morning. She went to sleep on her back, and slept much harder than usual because she was intoxicated. Overton, Clark, and Thayer remained downstairs.

When Clark went to the bathroom, Overton went upstairs to KS's bedroom. When Thayer noticed that Overton did not come back downstairs, he went to investigate. As Thayer entered the bedroom, he saw that KS's shirt was pulled up exposing her breasts and that her pants and underwear were pulled down below her knees. Overton was on top of KS, kissing her lower abdomen. Thayer described KS as "[u]nconscious." Report of Proceedings (RP) at 365. Thayer yelled at Overton to leave and, with Clark's help, physically removed him from the house.

KS testified that she was not fully conscious and was still intoxicated when she became aware that Overton was in her room. Her pants were off, her underwear was around her knees, and her shirt was pulled up. Overton was kissing her stomach and "working his way down." RP at 184. KS said that she kept moving away, but he kept coming back and being persistent. Overton was trying to separate her knees and KS kept trying to close them and roll away from him. KS remembered Overton saying "tell me when to stop", RP at 183, and she felt like she was telling him to stop.

The State charged Overton with attempted second degree rape and, alternatively, with indecent liberties. In addition to the testimony above, the State presented DNA evidence linking

2

Overton to saliva samples taken from KS's abdomen. A jury convicted Overton of attempted second degree rape. Overton appeals his conviction.

ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

Overton argues that the State did not present sufficient evidence that he intended to have sexual intercourse with KS, an essential element of attempted second degree rape. He claims that the evidence was sufficient to convict him only of indecent liberties under RCW 9A.44.100(1)(b), which does not require intent. We disagree.

1.    Standard of Review

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* at 106. Credibility determinations are made by the trier of fact and are not subject to review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). Circumstantial and direct evidence are equally reliable. *Id.*

2.    Attempted Second Degree Rape

Under RCW 9A.44.050(1)(b), "[a] person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person: . . . (b) When the victim is incapable of consent by reason of being physically helpless or mentally incapacitated." RCW 9A.44.010(1) defines "sexual

intercourse" as penetration as well as oral-genital contact: "any act of sexual contact . . . involving the sex organs of one person and the mouth . . . of another." RCW 9A.44.010(1)(c).

Under RCW 9A.28.020(1), "[a] person is guilty of an attempt to commit a crime if, *with intent to commit a specific crime*, he or she does any act which is a substantial step toward the commission of that crime." (Emphasis added.)

The State charged Overton with attempted second degree rape. Therefore, the State did not have to prove that Overton had sexual intercourse, only that he intended to do so and that he took a "substantial step" corroborating his criminal purpose. *State v. Johnson*, 173 Wn.2d 895, 899, 270 P.3d 591 (2012).

3. Analysis of Evidence

Overton argues that there was no evidence that he intended to have sexual intercourse with KS because (1) Clark and Thayer were present and KS's bedroom was nearby, (2) Overton knew that Thayer had watched him go upstairs and into the bedroom, (3) there was no evidence that Overton had removed any of his own clothing, and (4) there was no evidence that Overton touched KS's breasts or vagina. But Overton ignores undisputed evidence from which a jury easily could infer that Overton intended to have oral-genital sexual contact with KS.

First, Overton went into a bedroom where KS was sleeping and removed her pants, pulled down her underwear, and pulled up her shirt to expose her breasts. Second, Overton was on top of KS and was kissing her lower abdomen, and he was "working his way down." RP at 184. Third, Overton was trying to spread open KS's knees as she resisted. Fourth, he was persistent and kept coming back as she tried to move away. And fifth, Overton's statement to

KS to "tell me when to stop", RP at 183, suggested that he intended to go further than merely kissing KS's abdomen.

A rational trier of fact could reasonably conclude from this evidence that Overton intended to have sexual intercourse with KS and took a substantial step toward that intended goal. Accordingly, we hold that the State presented sufficient evidence to meet its burden of proving attempted second degree rape.

B.      APPELLATE COSTS

Overton asks that we refrain from awarding appellate costs if the State seeks them. The State does not contest this request. Therefore, we decline to impose appellate costs.

CONCLUSION

We affirm Overton's conviction of attempted second degree rape.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, J.

BJORGEN, C.J.