# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON | No.  53025-2-II |
| Respondent, | |
| v. | |
| JACE THOMAS HAMBRICK | UNPUBLISHED OPINION |
| Appellant | |

LEE, C.J. — Jace T. Hambrick appeals his convictions for attempted second degree rape of a child and communication with a minor for immoral purposes, arguing that his right to a jury trial was violated because he never personally waived his right to a jury trial.  The State concedes Hambrick's jury trial waiver was improper.  We accept the State's concession.  Hambrick also argues that his conviction for attempted second degree rape of a child is not supported by sufficient evidence.  And, in a Statement of Additional Grounds (SAG),[1] Hambrick argues that his conviction for communication with a minor for immoral purposes is not supported by substantial evidence. We hold that sufficient evidence supports Hambrick's convictions.  Accordingly, we reverse Hambrick's convictions and remand to the trial court for further proceedings consistent with this opinion.

---

[1] RAP 10.10.

FACTS

In February 2017, the State charged Hambrick with attempted rape of a child in the second degree and communicating with a minor for immoral purposes. In January 2018, Hambrick's trial counsel filed a written jury trial waiver that stated,

> NOW COMES Defendant, Jace Thomas Hambrick, by and through his retained counsel of record, Steven W. Thayer, P.S., and hereby notifies the State and the Court that he has been advised of his right to a jury trial, and hereby knowingly waives jury in this case.

Clerk's Papers (CP) at 3. The waiver was signed by Hambrick's trial counsel but was not signed by Hambrick. On the morning of trial, Hambrick's trial counsel confirmed that they filed the jury trial waiver. The trial court also acknowledged the jury trial waiver had been previously filed with the court. Although Hambrick was present, he did not speak.

At trial, Detective Robert Givens of the Vancouver Police Department testified regarding the investigation that led to Hambrick's arrest. Detective Givens participated in an undercover operation to identify people using the internet to sexually exploit children. As part of the operation, Detective Givens created an internet posting for a "casual encounter" section of a website. 1 Verbatim Report of Proceeding (VRP) at 52. The posting was titled, "jus gamer gurl sittin home on sunny day - w4m." Exhibit 1. Detective Givens testified that "w4m" means a woman looking for a man. Exhibit 1. Detective Givens specifically chose the language for the posting to appear as a younger person.

Hambrick responded to the posting by email. The following exchange took place over email between Hambrick and Detective Givens, who was posing as the person who made the internet post:

2

[GIVENS:] I am HOOKED on ALIEN ISOLATION rite now. I suk, but im hooked :P

[HAMBRICK:] . . .forget sex. Let me come watch. I haven't gotten that one yet. I'm on overwatch and the witcher 3 xD

[GIVENS:] I'm a 20 year old white guy that's sore from work and wants to relax and watch the alien kill you. Maybe more. :P

[GIVENS:] im 13 and this alien is fukn tearin me up

[HAMBRICK:] Pft. . . xD why did you post an ad in craigslist if your 13? You mean 23? Also. Yea? Man I wanna watch xD

[GIVENS:] sorry i like college guyz :P

Exhibit 2 at 2-3.[2]  After a few more emails, Hambrick began communicating by text message.

Hambrick requested a photo of the girl "Julie" with whom he thought he was texting. Givens sent

a picture of an undercover officer dressed to appear as a 13-15 year old girl. The following text

message exchange took place between Detective Givens posing as "Julie" and Hambrick:

[HAMBRICK:] Haha. So were you interested in hanging out? Or was this more of a text buddy thing?

[GIVENS:] im down 4 whatevs. wat u thinkin?

[HAMBRICK:] You live alone? Cause I can drive up and we can chill for a few hours.

[GIVENS:] i live with my nosy a$$ mom

[HAMBRICK:] Oh yea? Doesn't bother me if you lock the door ;) just in case.

[GIVENS:] wat u thinkin :)

[HAMBRICK:] I dunno. I personally love to eat a woman out. But I wanna meet you first and talk to you. Cause I think this could be more. If you wanted it to be :)

[GIVENS:] wow. u cool wit dat? im blushin man. . .

[HAMBRICK:] Haha. I don't get out much. And I love to game. I feel like if we got to talking it might go somewhere. You're beautiful and a gamer. I have no problem hanging out with you. :)

[GIVENS:] that's kewl. wat bout that eatin out stuff :P

[HAMBRICK:] Yes. I will still do that ;)

[GIVENS:] oh my naughty boi!

[HAMBRICK:] I can be real bad if your into bondage

[GIVENS:] ooo tell julie mor

[HAMBRICK:] One sec dear

---

[2] We note that Exhibit 2 does not contain page numbers. Thus, for purposes of this opinion, we number the pages 1-6 starting from the first page of the exhibit.

[HAMBRICK:] I have a blind fold, ball gag, some bed restraints. So I can tease your body. ;) and you can't do a thing about it.
[GIVENS:] oh my!!!!
[HAMBRICK:] Wanna do this tonight? You have me eager.
[GIVENS:] hmmmm mayb. . .mom sumtimz goes out with her BF on weekends
[HAMBRICK:] Who says that if you like it we don't have to do it again. ;)
[HAMBRICK:] Cause if you like it. I'm gonna ask to come back xD
[GIVENS:] wow. u sur u kewl with this?
[HAMBRICK:] Why wouldn't I be?
[GIVENS:] cuz im 13. plus i cant drive.
[HAMBRICK:] Haha. Well. If you want we can do this in the car.
[GIVENS:] im kewl. lemme find out wat my mom is doin. u aint a crazy guy rite?
[HAMBRICK:] I honestly thought you were joking about being 13
[GIVENS:] No.
[GIVENS:] uhh im not. so we still kewl?
[GIVENS:] not jokin i mean
[HAMBRICK:] You won't call the cops will you?
[GIVENS:] fuk no. FTP lol
[HAMBRICK:] Yea? Then sure. Does your mom know your gonna lose your virginity?
[HAMBRICK:] XD
[GIVENS:] who says im a virgin? lol
[HAMBRICK:] Ohhh damn. . .so you're used to this
[GIVENS]: i don't kiss and tell ;)
[HAMBRICK:] Okay. Then yea. So. Do you want me in the house? Does your mom know about this?
[GIVENS:] uh no my mom would freak dude

Exhibit 3 at 1-3.

Hambrick continued texting "Julie" and arranged to meet her at her house. When Hambrick arrived at the house, the undercover officer from the photo met him at the door and let him in. Hambrick was arrested, and the State charged him with attempted second degree rape of a child and communication with a minor for immoral purposes.

Hambrick testified at his trial. Hambrick testified that when he was looking at internet postings, he had no interest in interacting with someone under the age of eighteen. Hambrick knew that when answering an internet ad he might end up interacting with someone pretending to be an

4

adult or pretending to be someone they were not and it was common for people to lie on the internet. Hambrick also testified that he never believed he was actually interacting with a 13 year old because the ad was posted on a website that required a person to be 18 to post ads and she was playing a game that was rated for people over 17 years old. He also did not believe that he was interacting with a 13 year old because of her language choices, that she was not a virgin, and she knew exact directions to her house. Hambrick further testified he could tell the person in the photo he received was not 13.

Hambrick also testified that he specifically asked the person he was interacting with to come to the door so he could verify that he was meeting a consenting adult and not a teenager. Hambrick stated that he believed the person who answered the door was over 20 years old. Hambrick further testified that if a 13 year old had opened the door he would have turned around and left.

Following the bench trial, the trial court entered written findings of fact and conclusions of law. Specifically, the trial court made the following finding regarding Hambrick's intent,

> The Defendant testified that he was engaged in online roleplaying and at all times believed he was communicating with an adult. This testimony is not credible. The defendant clearly expressed by words and conduct that he intended to have sex with a 13 year old.

CP at 65. The trial court concluded that Hambrick was guilty of attempted rape of a child in the second degree and communication with a minor for immoral purposes.

The trial court imposed an exceptional sentence downward of 18 months confinement. The trial court also imposed community custody and legal financial obligations.

Hambrick appeals.

5

ANALYSIS

Hambrick appeals his convictions, arguing that his right to a jury trial was violated because he never personally waived his right to a jury trial. Hambrick also argues that the trial court's findings of fact are insufficient to support the conclusion that Hambrick committed attempted second degree rape of a child and communication with a minor for immoral purposes because the trial court did not find that Hambrick believed that the person he was interacting with was 13 years old. The State concedes that Hambrick's right to a jury trial was violated. We accept the State's concession, reverse, and remand to the trial court for further proceedings consistent with this opinion.

A.    RIGHT TO A JURY TRIAL

Hambrick argues that his jury trial waiver was improper because he never personally waived his right to a jury trial. We agree.

We review a jury trial waiver de novo. *State v. Benitez*, 175 Wn. App. 116, 128, 302 P.3d 877 (2013). "A defendant may waive the right [to a jury trial] as long as the defendant acts knowingly, intelligently, voluntarily, and free from improper influences." *State v. Pierce*, 134 Wn. App. 763, 771, 142 P.3d 610 (2006). A waiver will not be presumed; instead, the waiver must be supported by the record on review. *Id*. The State has the burden of establishing a valid waiver has occurred. *State v. Wicke*, 91 Wn.2d 638, 645, 591 P.2d 452 (1979).

Waiver of the right to a jury trial does not require an extensive colloquy. *Pierce*, 134 Wn. App. at 771. However, the defendant must be informed of his right to a jury trial and make a "personal expression of waiver." *Id*. Because the waiver is personal to the defendant, it cannot be effected by counsel, even when done in the defendant's presence. *Wicke*, 91 Wn.2d at 644-45.

Here, the State concedes that Hambrick did not personally waive his right to a jury trial. The record shows that the written jury trial waiver that was filed in the trial court was signed only by Hambrick's trial counsel and not by Hambrick personally. And only Hambrick's trial counsel acknowledged the waiver before the trial court. Therefore, there is no evidence in the record that Hambrick personally waived his right to a jury trial. Accordingly, we accept the State's concession. Because Hambrick's jury trial waiver was improper, we reverse his convictions and remand this case to the trial court for further proceedings.

B.      SUFFICIENCY OF THE EVIDENCE[3]

Hambrick also argues that the trial court's findings of fact are insufficient to support his convictions for attempted second degree rape of a child and communication with a minor for immoral purposes because the trial court never found that Hambrick believed the person he was interacting with was actually 13 years old.

---

[3] We address Hambrick's challenge to the sufficiency of the evidence because "'[i]f there is insufficient evidence to support a conviction, the Double Jeopardy Clause requires reversal and remand for judgment and dismissal with prejudice.'" *State v. Rodgers*, 146 Wn.2d 55, 60, 43 P.3d 1 (2002) (quoting Br. of Cross Petitioner). Generally, jeopardy attaches in a bench trial when the first witness is sworn. *State v. George*, 160 Wn.2d 727, 742, 158 P.3d 1169 (2007). The Supreme Court has indicated that jeopardy may not attach to a bench trial that was held with an improper jury waiver. *Id.* at 743 ("Because George had not waived his right to a jury trial, the trial court was without power to find George guilty.") However, the court's decision was made in the context of whether jeopardy attaches to pretrial dismissal, not whether jeopardy attaches to a bench trial held with an improper waiver of a jury trial. The court also stated, "'Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.'" *Id.* (quoting *Serfass v. United States*, 420 U.S. 377, 391-92, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975)). Because, here, the trial court swore in witnesses and made determinations of guilt, jeopardy arguably attached. And because there is no clear law on the issue, we address Hambrick's challenges to the sufficiency of the evidence. However, because we reverse Hambrick's convictions based on an improper jury trial waiver we do not address the remaining issues raised in Hambrick's opening brief or in his SAG.

Evidence is sufficient to support a conviction if, after viewing the evidence and all reasonable inferences in a light most favorable to the State, a rational trier of fact could find each element of the crime proven beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Our review of a claim of insufficient evidence arising from a bench trial is limited to whether substantial evidence supports the trial court's findings of fact and whether the findings support the conclusions of law. *State v. Alvarez*, 105 Wn. App. 215, 220, 19 P.3d 485 (2001). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person that the findings are true." *State v. Smith*, 185 Wn. App. 945, 956, 344 P.3d 1244, *review denied*, 183 Wn.2d 1011 (2015). Credibility determinations are for the trier of fact and this court does not review credibility determinations on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). We review de novo the trial court's conclusions of law. *State v. Rawley*,___Wn. App.___, 466 P.3d 784, 787 (2020).

To convict a defendant of attempted second degree rape of a child, the State must prove beyond a reasonable doubt that the defendant took a substantial step toward having "sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.076(1). A person is guilty of attempting to commit a crime if, "with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). Attempt also requires the specific intent to have sexual intercourse with a child. *State v. Johnson*, 173 Wn.2d 895, 908, 270 P.3d 591 (2012).

Contrary to Hambrick's argument, proving attempted second degree rape of a child does not require that the State prove the defendant believed that they were interacting with a person of

8

a certain age. *Johnson* explained in detail what was required to prove specific intent for attempted rape of a child:

> [I]t is clear that the age of the victim of child rape—either the child victim's actual age or the defendant's belief in a fictitious victim's age—is material to proving the specific intent element of attempted child rape. The State must prove the age of the intended victim to prove that the defendant intended to have sexual intercourse with a child. However, the State's method of proving the intended victim's age will be different depending on whether the victim is an actual child or a fictitious child.
>
> . . . [A] fictitious victim exists only within the context of the sting operation; her age can be established only by publication and receipt of the information. Thus, the State must show that the defendant knew the perceived victim's age, usually by proving that the perceived victim communicated her age and the defendant received the information. The State must then make the same proof of the defendant's intent: that he intended sexual intercourse with this victim.

173 Wn.2d at 908.

Here, Givens, posing as "Julie," stated that she was 13 at least 3 times throughout the text messages and emails. Hambrick acknowledged Julie's statements that she was 13 and stated he wanted to have sex with her anyway. Although Hambrick testified that he did not believe he was actually communicating with a 13 year old, the trial court explicitly found his testimony to be not credible. We do not review the trial court's credibility determination. Based on the evidence, the trial court specifically found that "[t]he defendant clearly expressed by words and conduct that he intended to have sex with a 13 year old." CP at 65. The trial court's finding is supported by substantial evidence.

The emails and text messages are substantial evidence supporting the trial court's finding that Hambrick intended to have sex with a 13 year old. Accordingly, sufficient evidence supports Hambrick's conviction for attempted second degree rape of a child.

9

In his SAG, Hambrick also argues that the evidence was insufficient to support his conviction for communication with a minor for immoral purposes. A person is guilty of communicating with a minor for immoral purposes if the person "communicates with someone the person believes to be a minor for immoral purposes." RCW 9.68A.090(1). Hambrick asserts that he did not believe that he was communicating with a minor but was instead engaged in roleplaying.

As explained above, in the communications between Givens and Hambrick, Givens, posing as "Julie," repeatedly stated that she was 13 years old. Although Hambrick claimed he did not believe he was communicating with a 13 year old, the trial court did not find this testimony credible. Therefore, there was substantial evidence to support the trial court's findings that Hambrick communicated with "Julie" with the intent to have sex with a 13 year old and, therefore, sufficient evidence supports the trial court's conclusion that Hambrick communicated with a person he believed to be a minor for immoral purposes.

Although Hambrick's convictions for attempted second degree rape of a child and communication with a minor for immoral purposes were supported by substantial evidence, Hambrick's right to a jury trial was violated by an improper jury trial waiver. Therefore, we reverse Hambrick's convictions and remand to the trial court for further proceedings.

No. 53025-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Maxa, J.

_____
Glasgow, J.

11