IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53685-4-II |
| Respondent, | |
| v. | |
| ROBERT MORGAN LANE, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Robert Morgan Lane was convicted of attempted first degree assault after shouting threatening language at officers while holding a gun as they tried to arrest him on a warrant. Lane contends the evidence was insufficient to show that he intended to inflict great bodily harm on another person. Lane also argues that his sentence exceeded the statutory maximum, and he challenges the imposition of interest on nonrestitution legal financial obligations.

We affirm Lane's conviction for attempted first degree assault because the evidence was sufficient to support his conviction. Lane's sentence exceeded the statutory maximum and we remand for resentencing. We also accept the State's concession that the provision imposing interest on nonrestitution obligations was improper, and we direct the trial court not to impose interest on nonrestitution obligations upon resentencing.

Lane raises additional arguments for reversal in a statement of additional grounds for review (SAG). None of Lane's SAG arguments merits reversal.

FACTS

A.    The Arrest

On the morning of February 28, 2019, Sergeant Garique Clifford and Deputy Jennifer Vejar of the Skamania County Sheriff's Office went to Lane's home to arrest him on active arrest warrants, but Lane did not answer the door. That afternoon, Lane's lawyer notified law enforcement that Lane called him, saying he was suicidal, had a gun, and police were surrounding his house.

Clifford, who knew Lane, briefly spoke to Lane on the phone, but the call dropped because the connection was poor. Clifford then contacted two other officers, Undersheriff Pat Bond and Chief Deputy David Waymire. Bond and Waymire met Clifford at a parking lot near Lane's house. Deputy Will Helton joined later.

Waymire had known Lane for over 30 years because they grew up in the same community, and Clifford thought their rapport might help Waymire convince Lane to come out of his house. Waymire and Lane texted and talked on the phone. Waymire tried to convince Lane to peacefully allow the officers to arrest him, but Lane made "suicidal statements . . . about having a weapon and using the weapon on himself" and refused to come out. Verbatim Report of Proceedings (VRP) (May 13, 2019) at 268.

Lane then stopped communicating with the officers. Clifford, Waymire, Bond, and Helton returned to Lane's house, knocked on the front door, and shouted for Lane to come out. One of the officers shouted to Lane that he would kick the door in if Lane did not come out. Lane did not come to the door and after about five minutes, the officers decided to kick in the back door of

Lane's house. They intended to reestablish communication but not enter the house. Clifford was wearing a body camera, which recorded the officers.

Clifford, Waymire, and Helton walked around to the back door of the house while Bond stayed at the front. The officers could hear a dog barking inside and were concerned it might attack. Waymire kicked the door until it gave way. Clifford stood behind Waymire with his rifle drawn to cover Waymire and pepper spray ready if the dog became a problem. Clifford had a view of the door. Waymire stepped to the side immediately after the door opened, and Clifford stepped almost directly in front of the door. Lane stood inside the hallway about 20 feet away. Lane was holding a long-barreled dark-colored gun. The lights were off inside the house, but it was the middle of the day, so ambient outdoor light illuminated the open doorway.

As soon as Clifford stepped in front of the door, Lane shouted, "There's only one way this ends, motherf*****s." VRP (May 13, 2019) at 239 Clifford then said, "[O]h, s**t, he's got a gun." VRP (May 13, 2019) at 240. Waymire and Helton hopped over the backyard fence into a neighboring yard while Clifford began slowly backing away from the door. At the same time, Lane shouted, "F**k you, Dave" (referring to Waymire) and "Don't make me do something f**king stupid." *Id.*

As he retreated, Clifford described Lane's gun, saying into his radio, "It's a long gun, black." VRP (May 13, 2019) at 241. The officers then called the Special Weapons and Tactical Team (SWAT).

While waiting for SWAT to arrive, Waymire texted with and talked to Lane on the phone and tried to persuade Lane to surrender. Lane wrote, "I promise [I']m no threat to anyone," followed by, "Me, myself and [I] maybe." Ex. 2 at 5. Waymire responded, "I know." *Id.* Lane later

wrote, "Please don[']t have [SWAT] do anything, [I] don't want suicide by cop. Not at all," and "I know if they make entry and [I'm] still holding this shottie, [that is] exactly what will happen[.] You know this." Ex. 2 at 9.

Lane also told Waymire over the phone that he planned to kill himself with his shotgun and had 12 gauge slugs for ammunition. During the call, Lane slammed the gun down, causing it to fire into the ceiling. Waymire heard the gun go off through the phone. Lane then explained to Waymire that it was an accidental discharge because the gun had a "hair trigger." VRP (May 13, 2019) at 279.

Lane decided not to shoot himself, so he disassembled the shotgun and placed one portion on the back of the couch and other portions in an attic crawlspace above the garage accessible by a ladder. Lane then came out of the house unarmed and surrendered to law enforcement.

The officers obtained a search warrant for the house. The officers found the pieces of the gun. The State presented evidence that if the barrel was attached to the stock and trigger, it would create a functional firearm that could be lethal from a 20-foot range.

Lane was charged with three counts of attempted first degree assault with firearm enhancements for each count and unlawful possession of a firearm.

B.      Trial

The officers testified consistent with the facts above. Clifford also testified that he was afraid during the incident and believed Lane was going to shoot him.

The trial court admitted the text messages between Waymire and Lane, and Waymire read them into the record. Photographs of the house and items inside it, as well as the firearm

components and ammunition, were admitted at trial and several officers testified about this evidence. Footage from Clifford's body camera was admitted and played for the jury.

Lane's testimony about the events differed to some degree from the testimony of the officers. Lane said that when the officers came to his house he was suicidal but never intended to hurt anyone else. Lane denied that he had been holding a weapon when the officers kicked in the door and said he was on the floor restraining his dog. Lane acknowledged making the comments recorded on Clifford's body camera, but he explained he was merely frustrated that the officers had broken his door because he was trying to sell the house. Lane also said that being confronted by the officers made him feel a greater urgency to kill himself but his comments were not intended as threats to the officers.

Lane also testified that the shotgun was not assembled when the officers kicked in the door, he only began assembling it afterward, and he was not sure it would be a viable weapon. But on cross-examination, Lane agreed that the shotgun he had assembled could "blow a hole" through someone and he intended to use that gun to end his own life. VRP (May 13, 2019) at 393.

The jury was instructed that to convict Lane of attempted first degree assault, the State had to prove that Lane intended "to inflict great bodily harm" and took "a substantial step" toward "assault[ing] another with a firearm." Clerk's Papers (CP) at 216-17. The jury instructions defined "intent" as "acting with the objective or purpose to accomplish a result that constitutes a crime" and defined "great bodily harm" as "bodily injury that creates a probability of death . . . significant serious permanent disfigurement, or . . . significant permanent loss or impairment of the function of any bodily part or organ." CP at 220, 223. The jury instructions stated that an act constituting assault could be either an attempted battery or "an act done with the intent to create . . .

apprehension and fear of bodily injury." CP at 219. In closing, the State argued that the officers, including Clifford, were afraid and thought Lane would shoot them.

C.      Verdict and Sentence

The jury found Lane guilty of attempted first degree assault against Clifford (count I), second degree unlawful possession of a firearm (count IV), and the lesser included offense of second degree assault against Clifford (count V). The jury found by special verdict that Lane was armed with a firearm at the time of the offenses. The jury was unable to reach a verdict on the charges of attempted first degree assault and second degree assault of Waymire and Helton (counts II, III, VI, and VII). The trial court declared a mistrial with regard to counts II, III, VI, and VII.

Lane was sentenced for counts I and IV. His base sentence for attempted first degree assault was 84 months. Lane was convicted of attempted first degree assault using a firearm, so the 36-month firearm sentencing enhancement under RCW 9.94A.533(3)(b) brought his sentence to the statutory maximum of 120 months. The trial court imposed a 12-month concurrent sentence for Lane's unlawful possession of a firearm conviction. Lane was also sentenced to 36 months of community custody.

Lane's judgment and sentence contained a boilerplate notation stating that the "combined term of confinement and community custody for any particular offense cannot exceed the statutory maximum." CP at 283. The trial court explained that it was sentencing Lane to 36 months community custody, but Lane would only serve community custody time if he earned early release credits, such that his total sentence would not exceed the 120-month statutory maximum.

The trial court also imposed the $500 crime victim assessment and $100 DNA collection fee. The judgment and sentence stated that all legal financial obligations would bear interest at the rate applicable to civil judgments.

Lane appeals his convictions, sentence, and the imposition of interest on nonrestitution legal financial obligations. Lane also filed a SAG.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE FOR ATTEMPTED FIRST DEGREE ASSAULT

Lane argues the evidence was insufficient to convict him of attempted first degree assault because there was no evidence that he intended to inflict bodily injury on another person or create an apprehension of harm in anyone. We disagree.

A.     Attempted First Degree Assault

Under RCW 9A.36.011(1)(a), a person may be convicted of first degree assault if the State proves that the person acted "with intent to inflict great bodily harm" and, as applicable here, "[a]ssault[ed] another with a firearm." The statute does not define "assault," so common law definitions apply. *State v. Stevens*, 158 Wn.2d 304, 310-11, 143 P.3d 817 (2006). There are three common law definitions of "assault" under Washington law: "(1) [A]n attempt, with unlawful force, to inflict bodily injury upon another; (2) an unlawful touching with criminal intent; and (3) putting another in apprehension of harm whether or not the actor intends to inflict or is incapable of inflicting that harm." *Id.* at 311. These definitions are "merely descriptive" and "do not constitute additional alternative means of committing . . . assault." *State v. Elmi,* 166 Wn.2d 209, 215-16, 207 P.3d 439 (2009). The jury here was instructed on the first and third definitions of "assault."

7

"The mens rea for first degree assault is the specific intent to inflict great bodily harm." *Id.* at 215. "Specific intent" means "intent to produce a specific result, as opposed to intent to do the physical act that produces the result." *Id.*; *see also* RCW 9A.08.010(1)(a). "Great bodily harm" is "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c). "When '[s]pecific intent' is an element of the crime, it 'cannot be presumed'" but "it 'can be inferred as a logical probability from all the facts and circumstances.'" *State v. Johnson*, 188 Wn.2d 742, 762-63, 399 P.3d 507 (2017) (alteration in original) (quoting *State v. Wilson*, 125 Wn.2d 212, 217, 883 P.2d 320 (1994)).

Under RCW 9A.28.020(1), a person can be convicted of an attempt crime where the State proves that the defendant acted "with intent to commit a specific crime" and did "any act which is a substantial step toward the commission of that crime." *See also State v. Nelson*, 191 Wn.2d 61, 71, 419 P.3d 410 (2018). An act that constitutes a substantial step is one that strongly corroborates the actor's criminal purpose. *State v. Johnson*, 173 Wn.2d 895, 899, 270 P.3d 591 (2012). "Any slight act done in furtherance of a crime constitutes an attempt if it clearly shows the design of the individual to commit the crime." *State v. Price*, 103 Wn. App. 845, 852, 14 P.3d 841 (2000).

B.    Sufficiency of the Evidence

To determine the sufficiency of the evidence, we assess whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Yishmael*, 195 Wn.2d 155, 177, 456 P.3d 1172 (2020). We draw all reasonable inferences in favor of the State and assume the truth of the State's evidence. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019), *cert. denied*, *Scanlan v. Washington*, 140 S.

Ct. 834, 204 L. Ed. 2d 483 (2020). We cannot review the trier of fact's credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). "Direct and circumstantial evidence are equally reliable." *State v. Dillon*, 12 Wn. App. 2d 133, 140, 456 P.3d 1199, *review denied*, 195 Wn.2d 1022 (2020).

Lane limits his sufficiency of the evidence challenge to the mental state element of attempted first degree assault. Lane contends that the evidence showed he was suicidal but never intended to harm others. Lane asserts, "The State failed to prove that [his] act of holding a gun . . . was done with the intent to cause great bodily harm." Br. of Appellant at 15.

Viewing the evidence in the light most favorable to the State, a reasonable jury could have found beyond a reasonable doubt that Lane intended to cause great bodily harm to Clifford. Lane was not merely holding a gun, but aiming a loaded gun at the officers while shouting threats at them. Lane ignored orders to come outside, and the officers kicked in the door to his house in an effort to arrest him, which supported a reasonable inference that Lane would be hostile to the officers. Given that context, the act of pointing a loaded gun at Clifford from 20 feet away, shouting that there was only one way the encounter would end, and warning the officers against making him do something "stupid" was enough for a reasonable jury to conclude that Lane exhibited an intent to shoot Clifford with a gun capable of seriously injuring or killing him. *See* VRP (May 13, 2019) at 240. A jury could thus reasonably have concluded that Lane intended to cause great bodily harm as required by RCW 9A.36.011(1)(a).

We reject Lane's contention that feeling suicidal meant he could not also have intended to hurt anyone else. Lane was charged with attempted first degree assault because he pointed the gun at Clifford, not at himself. To the extent Lane relies on text messages he sent to Waymire saying

that he was only a threat to himself, Lane sent those messages *after* the encounter with Clifford. Moreover, the jury was entitled to infer Lane's intent based on the behavior he exhibited, regardless of what he said was going through his mind during the encounter. *Johnson*, 188 Wn.2d at 762-63.

We affirm Lane's attempted first degree assault conviction.

## II. SENTENCING

### A. Statutory Maximum

Lane argues that his sentence exceeded the 120-month statutory maximum for his offenses. We agree.

"A sentence may not exceed the statutory maximum term set by the legislature." *State v. Hagler*, 150 Wn. App. 196, 203, 208 P.3d 32 (2009); RCW 9.94A.505(5). A community custody term "shall be reduced . . . whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum." RCW 9.94A.701(9). A note on the judgment and sentence indicating that the total sentence, including community custody, may not exceed the statutory maximum does not comply with RCW 9.94A.701(9). *State v. Boyd*, 174 Wn.2d 470, 472-73, 275 P.3d 321 (2012). When this issue is raised on appeal, the appropriate remedy is to remand for the trial court to amend the sentence consistent with RCW 9.94A.701(9). *Id.* at 473.

Here, the statutory maximum was 120 months. RCW 9A.36.011(2), .28.020(3)(b), .20.021(1)(b). Lane was sentenced to 84 months for his attempted first degree assault conviction and the 36-month firearm enhancement, bringing his confinement term to the 120-month statutory maximum. Lane was then sentenced to an additional 36 months community custody. Lane's

judgment and sentence thus does not comply with RCW 9.94A.701(9). *Boyd*, 174 Wn.2d at 472-73. We remand for the trial court to resentence Lane on count I consistent with RCW 9.94A.701(9).

B.      Interest on Nonrestitution Legal Financial Obligations

The State concedes that the judgment and sentence improperly imposed interest on nonrestitution obligations. Br. of Resp't at 13. We accept the State's concession and direct the trial court to address this error on resentencing.

### III.  STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Lane appears to argue that the evidence was insufficient to convict him of attempted first degree assault because the body camera footage shows that Clifford could not have seen Lane holding a gun because the door was only open a few inches, the house was dark, and the windows were closed. Lane further argues that he was not holding a gun but restraining his dog.

We reject this argument. Clifford testified that he saw Lane standing in the hallway of the house holding a gun. Clifford said he could see into the house even though the lights were off because it was daylight outside and the ambient light illuminated the hallway through the open door. Clifford's testimony was evidence. Lane testified to his version of events, including that it was completely dark in his house and he was restraining his dog. The jury weighed this conflicting testimony, and we do not review credibility determinations on appeal. *Camarillo*, 115 Wn.2d at 71.

Lane also argues that the body camera audio recording does not capture him saying, "'Don't make me do something f****** stupid.'" SAG at 1. But Lane can be heard making this comment in the body camera footage.

11

No. 53685-4-II

CONCLUSION

We affirm Lane's conviction for attempted first degree assault because the evidence was sufficient to convict him of this offense. We remand for resentencing in accord with RCW 9.94A.701(9) and direct the trial court not to impose interest on nonrestitution obligations upon resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

, C.J.
Lee, C.J.

Worswick, J.

12