IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83468-1-I |
| Respondent, | DIVISION ONE |
| v. | |
| BRANDON CHRISTOPHER PAMON, | UNPUBLISHED OPINION |
| Appellant. | |

CHUN, J. — The State charged Brandon Pamon with attempted rape of a child in the second degree, attempted promotion of commercial sexual abuse of a minor, and communicating with a minor for immoral purposes. After a bench trial, the trial court found Pamon guilty as charged. It imposed an exceptional downward sentence. Pamon appeals, contending that his defense counsel was ineffective for failing to raise an entrapment defense and, in the alternative, that the court's findings do not support its determination that he took a substantial step toward the commission of attempted promotion of commercial sexual abuse of a minor. For the reasons below, we affirm.

I. BACKGROUND

A. Facts

In August 2018, Pamon received a Facebook "friend request" from a profile with the name Samantha "Sam" Collins. Undercover Washington State Patrol (WSP) Sergeant Carlos Rodriguez managed Sam's profile. Rodriguez used photos of WSP Trooper Jennifer Wilcox as photos of the fictitious Sam.

Citations and pin cites are based on the Westlaw online version of the cited material.

Some photos were edited with filters that made Wilcox appear younger. At the time, Rodriguez worked for the WSP Missing and Exploited Children's Task Force (MECTF), which conducts undercover operations—called "Net Nanny" operations—to identify sexual predators. Rodriguez testified that they targeted Pamon because, according to an FBI agent, Pamon had become Facebook friends with young girls.

Pamon accepted the friend request and messaged Sam, saying that he wanted to get to know her and that she was "hella gorgeous." Sam asked for Pamon's age, and he said that he was 20 years old; after Sam expressed disappointment that he could not buy alcohol, he responded with his correct age of 28. During their text exchange, he suggested that he "come and pick [her] up" and Sam told him she was 13 years old. Pamon responded by trying to video chat with Sam, which attempt Sam ignored. Pamon continued to try to video chat with Sam throughout their text exchanges. He told Sam he "want[ed]" her and that she was "hella sexy." A few days later, he asked Sam for a nude photograph and Sam sent him a photograph of Wilcox clothed. He told her he wanted to "f*** the s*** out" of her and mentioned sexual acts. During an exchange in which Sam alluded to her age by saying she thought her breasts would grow, Pamon responded, "How old are you and don't lie to me." She said, "I already told u. 13" to which he replied, "I know when I'm going to see you." Sam also mentioned that she "hustle[s] up in fed way sumtimes."

Communication between the two temporarily ceased in September and about three weeks later, in October, Sam initiated communication. During the

2

exchange, Pamon said, "You know what I want to do to you" to which she replied, "make paper lol" and "fr lmk." He responded, "Ya and I want to fuck you Hella bad." Throughout their exchanges, Sam alluded to sex work by calling Pamon "daddy," mentioning moving between multiple towns, and talking about "hustling" and "paper."

In December, Wilcox, pretending to be Sam, and Pamon spoke on the phone. During the call, Pamon suggested that he could "sell" Sam and make "good money." The two planned a meeting for December and Sam asked him to bring condoms. The meeting did not occur but the two continued to communicate. In later messages, Pamon asked Sam whether she was "ready to walk" and whether she would do "the track" for him—referencing the solicitation of sex customers on the street.

In January 2019, Pamon travelled by bus to meet Sam in Tacoma. While Pamon was travelling, Sam asked him, "u still wanna f*** me or just wanna make money or both?" and Pamon responded, "I want both." Sam gave him an address, and when Pamon arrived at the house, law enforcement arrested him. He was carrying a condom and the phone used to communicate with Sam.

B. Procedural History

The State charged Pamon with attempted rape of a child in the second degree, attempted promotion of commercial sexual abuse of a minor, and communication with a minor for immoral purposes. His case proceeded to a bench trial.

3

During Rodriguez's testimony, defense counsel moved to have the State disclose exculpatory evidence in the form of Sam's Facebook account. The State responded that defense counsel did not interview Rodriguez and did not request Sam's account before trial despite knowing the case involved Facebook. The State then pointed out that Pamon had not asserted the affirmative defense of entrapment. Defense counsel later moved to amend Pamon's defense to include entrapment, which motion the State opposed as untimely. The court requested briefing on the issue. After the parties rested, the court suggested they could address entrapment in their closing and the State objected. Defense counsel agreed to waive the entrapment defense, noting that he was "sufficiently pleased" with the way things turned out.

During trial, defense counsel contended that Pamon did not believe Sam's stated age and thus did not have the requisite intent for the three charged crimes. Defense counsel argued that Pamon's repeated attempts to video chat with Sam were attempts to verify her age. The defense emphasized Pamon's comment to Sam telling her not to lie to him about her age. The defense noted that the unedited photos of Sam on her Facebook profile appeared to be of a person older than 13 years of age and that some of her language and behavior was unusual for a 13-year-old. The defense contended that Pamon planned to see Sam in person to verify her age when he was arrested.

The trial court found Pamon guilty as charged.

During sentencing, the court noted that the degree to which law enforcement targeted Pamon here was unusual compared to typical MECTF "Net

4

Nanny" operations. The court found by a preponderance of the evidence three mitigating factors justifying an exceptional downward sentence. The first mitigating factor was that law enforcement, as the "complaining witness," was "to a significant degree, an initiator, willing participant, aggressor, or provoker of the incident." The second mitigating factor was that "the Defendant, with no apparent predisposition to do so was induced by others to participate in the crime" and the court found there was no evidence Pamon had been "friending young girls" on Facebook. And the third mitigating factor was that "the Defendant's capacity to appreciate the wrongfulness of his conduct, or to conform his conduct to the requirements of the law, was significantly impaired." The court found that Pamon "has a compromised intellect" and that Sam "initiated discussions of commercial sexual exploitation." The court sentenced Pamon to an indeterminate sentence of 96 months to life in prison.[1]

The court entered the final judgment and sentence on March 27, 2020. Pamon appeals.

## II. ANALYSIS

A. Ineffective Assistance of Counsel (IAC)[2]

Pamon says that his defense counsel provided ineffective assistance by failing to prepare, raise, and present an entrapment defense when the evidence

---

[1] Based on his criminal history, Pamon had an offender score of 9+, which led to a standard sentence range of 157.5–210 months to life in prison.

[2] The State contends that we must dismiss this appeal as untimely under RAP 5.2(a) because Pamon appealed his case more than 30 days after the entry of the final judgment and sentence. See State v. Molnar, 198 Wn.2d 500, 508, 497 P.3d 858 (2021) ("Generally speaking, a person seeking to challenge their conviction or sentence has 30 days in which to initiate a direct appeal."). But a Division Two Commissioner

justified such a defense. The State contends that defense counsel pursued the most viable defense and that Pamon cannot establish prejudice. We conclude defense counsel did not perform deficiently.

We review de novo IAC claims. State v. Feely, 192 Wn. App. 751, 768, 368 P.3d 514 (2016). The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. State v. Vazquez, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). "Courts indulge a strong presumption that the counsel is effective." Id.

> "To demonstrate ineffective assistance of counsel, a defendant must make two showings: (1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different."

Id. at 247–48 (quoting State v. McFarland, 127 Wn.2d 322, 334–35, 899 P.2d 1251 (1995)). The defendant bears the burden of establishing that defense counsel's performance was deficient by showing "'the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel.'" Id. at 248 (quoting McFarland, 127 Wn.2d at 336). "[W]e are highly deferential to the performance of counsel." State v. Crawford, 159 Wn.2d 86, 98, 147 P.3d 1288 (2006). "'A reasonable probability is a probability sufficient to undermine

---

addressed the issue and found grounds to extend the deadline for filing the notice of appeal and accepted it as timely. RAP 18.8 permits this, and we decline to dismiss the appeal on this basis.

confidence in the outcome.'" Vazquez, 198 Wn.2d at 248 (quoting Strickland v.

Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

RCW 9A.16.070 defines the entrapment defense as such:

(1) In any prosecution for a crime, it is a defense that:

(a) The criminal design originated in the mind of law enforcement officials, or any person acting under their direction, and

(b) The actor was lured or induced to commit a crime which the actor had not otherwise intended to commit.

(2) The defense of entrapment is not established by a showing only that law enforcement officials merely afforded the actor an opportunity to commit a crime.

The use of a "normal amount of persuasion" by law enforcement does not suffice

for the defense. State v. Trujillo, 75 Wn. App. 913, 918, 883 P.2d 329 (1994).

The State can use a variety of evidence to prove intent, such as ready

compliance with an illegal request, demonstrated eagerness to commit the crime,

and substantial effort in investigating and arranging an illegal transaction. State

v. Pleasant, 38 Wn. App. 78, 81, 684 P.2d 761 (1984); State v. Enriquez, 45 Wn.

App. 580, 586, 725 P.2d 1384 (1986); Trujillo, 75 Wn. App. at 919. "[M]ere

reluctance" to violate the law does not suffice to establish a lack of intent to

commit the crime. Trujillo, 75 Wn. App. at 918. A defendant must prove

entrapment by a preponderance of the evidence. State v. Lively, 130 Wn.2d 1,

13, 921 P.2d 1035 (1996).

Declining to present a defense that is unlikely to succeed[3] is a legitimate

---

[3] The State discusses this argument as a reason why Pamon fails to establish prejudice rather than a reason why defense counsel was not deficient. While we see how it relates to both elements of the IAC standard, we feel it is best addressed here. See State v. Classen, 4 Wn. App. 2d 520, 539, 422 P.3d 489 (2018) (holding that defense counsel was not deficient for not presenting a voluntary intoxication defense where one was unsupported by the evidence).

7

strategic choice.[4]  See Vazquez, 198 Wn.2d at 248 (noting that counsel is

deficient if the record lacks a legitimate strategic reason for counsel's conduct).

And the entrapment defense was unlikely to succeed in this case.  The second

question in the entrapment analysis is whether Pamon lacked the intent to

commit the charged crimes, and it appears he did not.  Sam did target Pamon by

sending him a friend request, unlike typical MECTF operations that involve

putting out an ad for sexual encounters.  But his eager and willing response to

the opportunity to have sex with a 13-year-old, strongly suggests intent as to the

rape charge.  After Sam told him she was 13 years old, he made multiple sexual

comments, including saying she was "hella sexy," saying that he "want[ed]" her,

saying that he wanted to "f*** the s*** out of" her, and asking her for nude

photographs.  See State v. Pouncy, No. 54670-1-II, slip op. at 19 (Wash. Ct. App.

Nov. 30, 2021) (unpublished), https://www.courts.wa.gov/opinions /pdf/

D2%2054670-1-II%20Unpublished%20Opinion.pdf ("there is no evidence that

---

[4] Pamon says that the State mischaracterizes his counsel's decision not to raise the entrapment defense as a strategic choice, and that the lack of an entrapment defense was instead the "inescapable result" of defense counsel's failure to adequately investigate evidence before trial.  Pamon contends that, had defense counsel performed an adequate investigation, counsel would have discovered the evidence Pamon contends supports an entrapment defense before trial, rather than during trial, allowing counsel to timely raise the defense.  But this argument focuses on the subjective reason behind counsel's decision not to raise an entrapment defense.  Pamon cites no authority saying that the subjective reason behind defense counsel's challenged behavior matters for our analysis.  Instead, we review counsel's decision not to raise entrapment based on an "'objective standard of reasonableness.'"  Vazquez, 198 Wn.2d at 247–48 (quoting McFarland, 127 Wn.2d at 334–35).  If Pamon contends that his defense counsel's failure to investigate was objectively unreasonable, he fails to show such a failure prejudiced him, because we conclude that the evidence defense counsel eventually discovered during trial is unlikely to support a viable entrapment defense.  See Vazquez, 198 Wn.2d at 247–48.  So even if defense counsel had discovered the evidence before trial, it was unlikely to have affected the outcome.

law enforcement officers induced Pouncy to respond to the 'Alexis' profile or continue communicating with 'Alexis' after he learned she was only 13 years old").[5] These facts also support intent as to the communication with a minor charge. And Pamon travelled to meet Sam and arrived with a condom. See State v. Carson, No. 36057-1-III, slip op. at 9–10 (Wash. Ct. App. Oct. 2, 2018) (unpublished), https://www.courts.wa.gov/ opinions/ pdf/360571_unp.pdf.[6] (holding that the defendant was not entitled to an entrapment defense where he travelled to meet the child and "showed his persistence by following the mother's directions to first drive to a gas station before the mother would provide the home address" and arrived with condoms). Pamon emphasizes that after a three-week period of no communication, Sam, not Pamon, was the one to reach back out. But he showed no reluctance to continue communicating with her and make plans to see her.

As for the attempted promotion charge, Pamon contends that his lack of response to Sam's initial comments about "hustl[ing]" shows a lack of intent to commit the crime. But after Sam raised the topic multiple times, he engaged and told her he could "sell" her and "make good money" and asked her whether she would do "the track" and was "ready to walk." See Pleasant, 38 Wn. App. at 81 (noting the "defendant's extensive knowledge of the customs and usages of the drug trade" in assessing predisposition); Enriquez, 45 Wn. App. at 586 (holding that the defendant "failed as a matter of law to make out a defense of

---

[5] See GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").

[6] See GR 14.1(c).

entrapment" where he eventually agreed to sell narcotics after an "informant repeatedly" suggested that he do so). Moreover, "mere reluctance" to violate the law does not suffice to conclude that Pamon lacked criminal intent. See Trujillo, 75 Wn. App. at 918. Because the entrapment defense was unlikely to succeed, Pamon's defense counsel was not deficient in failing to prepare, raise, and present it.[7]

The State's main argument on why defense counsel's performance was not deficient is that his defense theory—that Pamon lacked intent because he did not believe Sam's stated age—conflicted with the entrapment defense. Thus, the State concludes, it was a legitimate strategic choice to assert the defense it did instead of entrapment. But Pamon points out that this reasoning was rejected in State v. Arbogast, in which the court said that, while the entrapment defense conflicts with a defense that denies criminal conduct, it does not conflict with a defense that denies criminal intent. 15 Wn. App. 2d 851, 870, 478 P.3d 115 (2020), review granted, 197 Wn.2d 1007, 484 P.3d 1262 (2021).[8]

---

[7] On appeal, the parties dispute Pamon's burden of proof to show the elements of entrapment. The State contends it is preponderance of the evidence and Pamon contends that he need only show prima facie evidence. In so arguing, the parties cite authorities that address the burden of proof in the context of assessing whether a court erred by refusing to give a jury instruction on entrapment. But the question here is whether such a defense was likely to succeed, not whether the court erred by refusing to give jury instructions. To prevail on an entrapment defense, Pamon bears the burden of proving it by a preponderance of the evidence. See Lively, 130 Wn.2d at 13.

[8] But see State v. Forler, No. 79079-0-I, slip op. at 13 (Wash. Ct. App. June 10, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/790790.pdf (holding that the defense theory that the defendant lacked the requisite mens rea for attempted rape of a child and attempted commercial abuse of a child conflicted with an entrapment defense and that defense counsel was not deficient for choosing to pursue that defense theory instead of an entrapment defense); see GR 14.1(c).

Finally, Pamon contends that the fact that the trial court found by a preponderance of the evidence the mitigating factors that (1) law enforcement was "to a significant degree, an initiator, willing participant, aggressor, or provoker of the incident" and (2) "the Defendant, with no apparent predisposition to do so was induced by others to participate in the crime," shows that the evidence supports the entrapment defense. But he cites no authority suggesting that we can look to a court's findings on mitigating sentencing factors when assessing the viability of an affirmative defense. To the contrary, it appears we should not consider the court's mitigating factor findings in assessing this issue. Cf. Lively, 130 Wn.2d at 16 (in the context of entrapment, stating, "This court will not conclude, however, that mitigating factors used to justify an exceptional sentence may be considered in evaluating whether there was sufficient evidence to submit an issue to a jury"); see also State v. Jeannotte, 133 Wn.2d 847, 852, 947 P.2d 1192 (1997) (referring to the lack of apparent predisposition mitigating factor as "failed entrapment"). Before closing, the court suggested such a defense may not be viable after reviewing entrapment case law saying, "And candidly, I think at this point there are some difficult issues, legal issues, that may obviate the need for oral argument about entrapment or not." And its comments at sentencing and its sentence of 96 months to life suggest a belief in Pamon's guilt.

Because we conclude defense counsel's performance was not deficient, we decline to reverse Pamon's convictions on IAC grounds.

B. Substantial Step

Pamon says the trial court's findings of fact do not support its determination that he took a substantial step toward committing the crime of attempted promotion of commercial sexual abuse of a minor. The State responds that substantial evidence supports the findings because Pamon asked Sam about "walk[ing]" for him, referenced "the track," and travelled to meet her. Pamon says that the court's "finding" that he took a substantial step is not a finding but a conclusion of law and that his sole contention is that the court's findings do not support it.[9] We conclude that the court's findings support a determination that Pamon took a substantial step toward committing the crime of attempted promotion of commercial sexual abuse of a minor.

Following a bench trial, we limit our review to "whether substantial evidence supports the trial court's findings and whether the findings support its

---

[9] Pamon assigns error to the portion of finding of fact 10 discussing the "substantial step" requirement and says the court mislabeled it. Pamon cites Department of Labor & Industries v. Lyons Enterprises, Inc., to argue that we should treat the finding as a conclusion and review it accordingly. 186 Wn. App. 518, 529–30, 347 P.3d 464 (2015), aff'd, 185 Wn.2d 721, 374 P.3d 1097 (2016) ("[I]f a conclusion of law is labeled as a finding of fact, then it will be treated as a conclusion of law and reviewed de novo."). But Washington courts have long held that whether conduct constitutes a substantial step is a question of fact. See, e.g., State v. Workman, 90 Wn.2d 443, 449, 584 P.2d 382 (1978) ("The question of what constitutes a 'substantial step' under the particular facts of the case is clearly for the trier of fact."); State v. Billups, 62 Wn. App. 122, 126, 813 P.2d 149 (1991) ("Whether conduct constitutes a 'substantial step' toward the commission of a crime is a question of fact."); State v. Wilson, 158 Wn. App. 305, 317, 242 P.3d 19 (2010) ("Whether conduct constitutes a substantial step is a question of fact."). Even if a determination that Pamon took a substantial step toward the commission of the crime is a conclusion of law, as reflected below, the court's findings support such a conclusion.

conclusions of law." In re Dependency of Schermer, 161 Wn.2d 927, 940, 169 P.3d 452 (2007).

"A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). "Attempt consists of two elements: (1) intent, and (2) a substantial step." State v. Wilson, 1 Wn. App. 2d 73, 83, 404 P.3d 76 (2017). "The intent required is the intent to accomplish the criminal result of the base crime." State v. Johnson, 173 Wn.2d 895, 899, 270 P.3d 591 (2012). "We look to the definition of the base crime for the requisite criminal result." Id. "A substantial step is an act that is 'strongly corroborative' of the actor's criminal purpose." Id. (quoting State v. Luther, 157 Wn.2d 63, 78, 134 P.3d 205 (2006)). "Mere preparation to commit a crime is not an attempt." Wilson, 1 Wn. App. 2d at 83. "But '[a]ny slight act done in furtherance of a crime constitutes an attempt if it clearly shows the design of the individual to commit the crime.'" Id. (alteration in original) (quoting State v. Price, 103 Wn. App. 845, 852, 14 P.3d 841 (2000)).

"A person is guilty of promoting commercial sexual abuse of a minor if he or she knowingly advances commercial sexual abuse or a sexually explicit act of a minor or profits from a minor engaged in sexual conduct or a sexually explicit act." RCW 9.68A.101(1). A person "advances commercial sexual abuse of a minor" when they engage in any conduct "designed to institute, aid, cause, assist, or facilitate an act or enterprise of commercial sexual abuse of a minor." RCW 9.68A.101(3)(a).

13

After trial, the court found that Sam and Pamon "discussed Sam working as a prostitute for [Pamon]." The court found that Pamon told Sam on the phone "'I can sell you, make me some good money'" and that it was "clear from the context of the telephone conversations that [Pamon] and Sam were talking about having sex together and Sam having sex with others to make [Pamon] money." It also said, "Based on the hundreds of text messages, and the telephone calls, the court finds the overall context of the communication is that Sam would both engage in acts of sexual intercourse with [Pamon] and earn money for [Pamon] by engaging in acts of commercial sexual acts or prostitution." Finally, it found that Pamon travelled to an address Sam provided while communicating with Sam "about sexual matters" and was arrested with a condom. The court determined that Pamon was guilty of attempted promotion of commercial sexual abuse of a minor because Pamon, with the intent to commit the base crime, took a substantial step toward commission of the crime.

Pamon distinguishes his case from two Washington cases about attempted promotion of commercial sexual abuse of a minor. In Johnson, the defendant asked undercover officers posing as minors if they wanted to work for him as a "ho," explained what a "ho" does, told them what type of customer to seek, and instructed them to give earnings to him. 173 Wn.2d at 900. Johnson also tried to arrange training by "one of his experienced girls." Id. The court held that "a rational trier-of-fact could conclude beyond a reasonable doubt that Johnson intended to both advance and profit from the sexual exploitation of two

14

women who claimed to be 17 years old and that he took a substantial step in that direction." Id.

Pamon says that, unlike in Johnson, he did not make any particular plan with Sam for how, when, or where she should perform sex work or how much she should charge. He contends without such actions, simply discussing the idea with Sam and travelling to her location did not constitute a substantial step. But Johnson does not purport to establish a floor for what actions constitute a substantial step toward the commission of attempted promotion of commercial sexual abuse of a minor.[10] The court's findings support its determination that Pamon took such a substantial step. That he travelled to meet with Sam, taken in the context that he and Sam repeatedly "discussed Sam working as a prostitute"—making comments such as "I can sell you, make me some good money"—is "strongly corroborative" of his criminal intent. Johnson, 173 Wn.2d at 899; see also Wilson, 1 Wn. App. 2d at 85 (considering the "context of the relationship and the circumstances" in assessing a substantial step for an attempt crime).

We affirm.

_Chun, J._

WE CONCUR:

_Bowman, J_   _Mann, C.J._

---

[10] The other case Pamon cites, State v. Smith, is an unpublished case with facts like those in Johnson, which similarly does not recognize a floor for what can be considered a substantial step. No. 67957-4-I (Wash. Ct. App. Mar. 11, 2013) (unpublished), https://www.courts.wa.gov/opinions/pdf/678574.pdf; see GR 14.1(c).